McClendon, j.
|2In this workers’ compensation case, the employer appeals from a judgment of the Office of Workers’ Compensation (OWC) that determined that the claimant is entitled to permanent and total disability status. The judgment also awarded the claimant penalties and attorney fees. For the reasons that follow, we reverse in part and affirm in part.
FACTS AND PROCEDURAL BACKGROUND
In 2000, Vickie Young was employed by the City of Gonzales (the City) as a records clerk. On September 6, 2000, she injured her back while on the job when she tried to answer another employee’s telephone and tripped over a computer wire. Subsequently, Ms. Young underwent a dis-cectomy in 2001 and another in 2004, neither of which was successful. She continues to have complaints of low back pain radiating into her lower extremities. Ms. Young has been diagnosed with failed back syndrome, lumbar degenerative disc disease, lumbar radiculopathy, and peripheral neuropathy. She has not worked since the accident.
• Ms. Young was paid workers’ compensation benefits until they were terminated on July 4, 20.11. The termination was based on Ms. Young’s treating physician approving job positions for her that were identified through a labor market survey. Thereafter, on July 22, 2011, Ms. Young filed a disputed claim for workers’ compensation against the City and its insurer, Risk Management, Inc., seeking permanent and total disability benefits. Ms. Young also sought penalties and attorney fees. While the matter was pending, benefits were voluntarily reinstated on January 23, 2013.
The case was tried on January 7 and March 11, 2014, and the OWC took the matter under advisement. The OWC rendered its judgment on May 16, 2014, in favor of Ms. Young. The OWC determined that Ms. Young was permanently and totally disabled as a result of the accident as of May 16, 2012, the date her *1073 treating physician declared her permanently and totally disabled. The OWC also assessed $2,000.00 in penalties for the City’s failure to reinstate | ¡¡indemnity benefits as of May 16, 2012, and $10,000.00 in attorney fees. Oral reasons for judgment were given on May 28, 2014.
The City appealed, contending that the OWC erred in holding that Ms. Young is entitled to permanent and total disability status and in awarding penalties and attorney fees to Ms. Young. Ms. Young answered the appeal, seeking additional attorney fees on the appeal.
DISCUSSION

Disability Determination

Total disability, whether permanent or temporary, means the inability to engage in any gainful occupation, whether or not it is the same or one similar to that in which the employee was customarily engaged when injured. LSA-R.S. 23:1221(1)(a) and (2)(a); Quave v. Airtrol, Inc., 11-1182 (La.App. 1 Cir. 6/8/12), 98 So.3d 733, 736. A workers’ compensation claimant who seeks permanent total disability benefits must prove by clear and convincing evidence, unaided by any presumption of disability, that he or she is physically unable to engage in any employment or self-employment, regardless of the nature or character of the work. LSA-R.S. 23:1221(2)(c). In the absence of such evidence, the claimant’s demand for permanent total disability benefits fails. Nitcher v. Northshore Regional Medical Center, 11-1761 (La.App. 1 Cir. 5/2/12), 92 So.3d 1001, 1007, writ denied, 12-1230 (La.9/21/12), 98 So.3d 342.
The issue of disability within the framework of the workers’ compensation law is a legal rather than a purely medical determination. Therefore, the issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. Id. While the workers’ compensation laws are to be construed liberally in favor of the claimant, that interpretation cannot lessen the claimant’s burden. Ultimately the question of disability is a question of fact, which cannot be reversed in the absence of manifest error. Id. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Thus, if the fact finder’s findings are ^reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Pitre v. Buddy’s Seafood, 11-0175 (La.App. 1 Cir. 8/16/12), 102 So.3d 815, 820, writ denied, 12-2058 (La.11/16/12), 102 So.3d 41.
In this matter, the City contends that, based on jurisprudence and the prima facie evidence of the independent medical examination (IME)[1], Ms. Young’s neurosurgeon, and her own treating physician, Ms. Young did not meet her burden of proving that she is permanently and totally disabled and therefore the OWC committed manifest error in finding that she is permanently and totally disabled. The City contends that Ms. Young testified on direct examination that all she can pur *1074 portedly do is get out of bed and even that is difficult. However, the City contends it impeached Ms. Young’s testimony with Fa-cebook postings showing trips to the beach, where she went snorkeling, nights out in the French Quarter, and more. Therefore, according to the City, what Ms. Young swore to the OWC she could do was far different than what she was actually doing. However, Ms. Young points out that those activities and Facebook postings were prior to the disputed time period of disability. Further, she asserts that she is entitled to vacations and, as stated by the OWC, she is human with some days better than others. Ms. Young maintains that she has proven by clear and convincing evidence that she is unable to work in any capacity.
Ms. Young testified at trial that she is in chronic pain that requires the use of extensive pain medication. She also stated that she takes medication for her depression, which is related to her chronic pain. Ms. Young testified that the medication makes her feel sleepy and groggy. Further, Ms. Young stated that 15she has fallen several times and is considered a fall risk. She also testified that the most comfortable position for her is- to be lying down and that the most uncomfortable position is to be seated.
Ms. Young’s treating physician, Dr. Scott Nyboer, gave a deposition on January 30, 2012. He diagnosed Ms. Young with failed back syndrome. Dr. Nyboer stated that Ms. Young’s pain is due to her lumbar degenerative disc disease and the lumbar disc herniations with chronic radi-culopathy. He also believed Ms. Young to be credible with no malingering. He stated that Ms. Young will continue to experience pain whether or not a third surgery is performed.[2] It was also his opinion that Ms. Young’s chronic pain and her medications for pain could affect her ability to concentrate and impair her cognitive abilities. He stated that he cleared her for sedentary work, but recognized that, with her pain, he did not know if she could tolerate sustained employment. He believed sedentary work would be difficult unless Ms. Young could get her pain under better control. He believed that Ms. Young could probably sit for thirty minutes at a time and stand for fifteen minutes. He stated that she would have to change positions frequently and even lie down two to three times a day for fifteen minutes. Dr. Nyboer also believed that Ms. Young might require unscheduled breaks and that she might expect significant flare-ups of pain three to four times a month, causing her to miss work. Although Dr. Nyboer thought employment would help Ms. Young psychologically, he was of the opinion that it would be difficult for Ms. Young to sustain employment because of her pain. However, he thought with the right accommodations, Ms. Young could try some type of sedentary work.
On February 9, 2012, Thomas Mungall, a licensed vocational rehabilitation counsel- or, who testified as an expert at trial, issued his report. He stated that he met with Ms. Young on December 20, 2011, and that, based on the opinion of Dr. Ny-boer, with Ms. Young’s restrictions and chronic pain, and considering the |rjobs identified in the labor market survey, it was unrealistic that Ms. Young could be gainfully employed.
Thereafter, on May 16, 2012, Dr. Ny-boer issued a report indicating that Ms. Young could not return to work in any capacity and that she was permanently and totally disabled.
*1075 Dr. Nyboer was deposed again on September 26, 2012. He stated he had seen Ms. Young on two occasions since his first deposition. He noted that Ms. Young had fallen at home, and he considered her a fall risk. It was Dr. Nyboer’s opinion at the second deposition that Ms. Young was not able to work even at a sedentary job due to her failed back syndrome, her bilateral lumbar radiculopathies, and her right L3-4 and left L5-S1 disc herniations. Ms. Young’s chronic pain and pain medications also contributed to his change in her work status. It was Dr. Nyboer’s opinion that Ms. Young was not able to be gainfully employed, and he did not think that he would approve any jobs for her if presented.
Dr. Anthony Ioppolo, plaintiffs treating neurosurgeon, saw Ms. Young on several occasions, beginning in 2003. He was deposed on October 9, 2012, at which time he stated that he believed that Ms. Young had reached maximum medical improvement. Dr. Ioppolo confirmed the diagnosis that Ms. Young suffers from failed back syndrome. Dr. Ioppolo agreed with Ms. Young’s 2011 functional capacity evaluation (FCE) and believed that she was capable of sedentary work. In contrast to Dr. Nyboer, Dr. Ioppolo was of the opinion that Ms. Young could be gainfully employed at a sedentary level based on Ms. Young’s FCE and his knowledge of Ms. Young.
Because of the differing medical opinions, the City requested an independent medical examination (IME) and Dr. Dee-pak Awasthi, a neurosurgeon, was appointed by the court on October 22, 2012.
Dr. Awasthi examined Ms. Young on December 10, 2012. Dr. Awasthi’s examination showed weakness in Ms. Young’s lower extremities that were more significant on the right side. He observed Ms. Young walk with a limp and |7observed bruises from a, recent fall. Ms. Young had multi-level disc problems, particularly at the L4-5 and L5-S1 levels. Electrical studies confirmed nerve damage and past MRIs were consistent with Ms. Young’s complaints of pain. Dr. Awasthi diagnosed Ms. Young with failed back syndrome and extensive degenerative disc disease with a combination of neuropathy and radiculopa-thy. Although Dr. Awasthi was of the opinion that Ms. Young should be able to perform sedentary work, he believed it would be difficult for her to sustain any type of work. Dr. Awasthi did not doubt that Ms. Young suffered significant pain that required significant pain medications. Dr. Awasthi also felt that it was risky for Ms. Young to return to work until there was a better understanding of her nerve damage. Dr. Awasthi recommended further studies, including an MRI, nerve conduction velocity study, and FCE.
Dr. Awasthi issued a supplemental report on June 13, 2013, and gave a deposition on September 30, 2013. Dr. Awasthi stated that the MRI performed on March 6, 2013, was not markedly different from the July 2011 MRI. However, the EMG and nerve conduction velocity study of March 1, 2013, showed evidence of chronic nerve injury. Additionally, the FCE conducted on March 12, 2013, showed more limitations than the 2009 and 2011 FCEs. Nevertheless, Dr. Awasthi still believed Ms. Young was able to engage in work at a sedentary level on a part-time basis “with very careful monitoring of her standing and walking given the weakness in her legs and her frequent falls.”
Mr. Mungall also issued an updated vocational rehabilitation report on November 6, 2013. It was his opinion that with the physical restrictions and accommodations as noted by Dr. Nyboer, Dr. Ioppolo, and Dr. Awasthi, as well as the results of the FCE and of the physical therapist, as a matter of reality and practicality, an em *1076 ployer would not even consider hiring Ms. Young.
The OWC concluded that Ms. Young proved by clear and convincing evidence that she is permanently and totally disabled and entitled to permanent and total disability benefits. Dr. Nyboer, Dr. Iop-polo, and Dr. Awasthi all agreed that Ms. Young has failed back syndrome and chronic pain. They also confirmed |8that Ms. Young’s medication affects her ability to function. The doctors also all verified that Ms. Young would have difficulty sitting for long periods of time and might need to lie down during the day. Based upon all the evidence and our thorough review of the record, we cannot say that the OWC lacked a reasonable basis for its factual determination that Ms. Young is permanently and totally disabled. Thus, we find no manifest error.

Penalties and Attorney Fees

Pursuant to LSA-R.S. 23:1201F, an employer or insurer may be assessed with penalties and attorney fees for the “failure to provide payment in accordance with [LSA-R.S. 28:1201].”[3] Under the applicable statutory provisions of Subsection 1201F, penalties and attorney fees are recoverable unless “the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” LSA-R.S. 23:1201F(2). A claim is reasonably controverted when the employer has sufficient factual and/or medical information to reasonably counter evidence presented by the claimant. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890; Pitre, 102 So.3d at 823.
In the Brown v. Texas-LA Cartage, Inc. case, the Louisiana Supreme Court defined “reasonably controverted” as follows:
|9In general, one can surmise from the plain meaning of the words making up the phrase “reasonably controvert” that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Brown v. Texas-LA Cartage, Inc., 721 So.2d at 890. A determination of whether an- employer has failed to reasonably controvert a claim is a question of fact and is *1077 subject to the manifest error standard of review. Pitre, 102 So.3d at 823.
An employer should not be liable for penalties or attorney fees for taking a close factual or legal question to court for resolution. Pitre, 102 So.3d at 823; Brown v. A M Logging, 10-1440 (La.App. 1 Cir. 8/4/11), 76 So.3d 486, 496. Although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Pitre, 102 So.3d at 823; Brown v. A M Logging, 76 So.3d at 496.
The City contends that it reasonably controverted Ms. Young’s claim that she was not capable of doing at least sedentary work. It refers to Dr. Ioppolo’s September 26, 2010 report to Risk Management, following Ms. Young’s August 8, 2010 office visit, in which he opined that Ms. Young was capable of performing work at a sedentary level. Additionally, an FCE was conducted on May 10 and 11, 2011, that concluded that Ms. Young was then functioning at a sedentary level of work. Thereafter, benefits were terminated on July 4, 2011. According to the City, it reasonably controverted Ms. Young’s claim and should not be liable for penalties and attorney fees for the failure to reinstate benefits before January 23, 2013. See LSA-R.S. 23:1201F. The City contends that an employer should not be liable for penalties and attorney fees for taking a close factual or legal question to court for resolution.
| inThe record in this matter contains contradictory evidence regarding Ms. Young’s ability to work. In 2010, Dr. Iop-polo, her treating neurosurgeon, was of the opinion that Ms. Young was capable of sedentary employment. Her FCE in 2011 also indicated that Ms. Young could work in some capacity. Dr. Nyboer indicated in his first deposition on January 30, 2012, that it would be helpful to Ms. Young if she would try some type of sedentary work, although it might be difficult for her to sustain employment. However, Dr. Ny-boer issued his report on May 16, 2012, stating that Ms. Young could not return to work in any capacity. Two weeks later, on May 31, 2012, Ms. Young was again examined by Dr. Ioppolo, and he reported on July 8, 2012, that he agreed with the results of the 2011 FCE that found Ms. Young able to be performing at a sedentary level. In a letter dated July 31, 2012, to Risk Management, Dr. Ioppolo stated that he believed that Ms. Young was “able to be gainfully employed.” Additionally, in his deposition of October 9, 2012, Dr. Iop-polo was still of the opinion that Ms. Young could be gainfully employed with accommodations. Dr. Nyboer was again deposed in September 2012, at which time he confirmed that it was his opinion that Ms. Young was not able to be gainfully employed. In contrast, Dr. Ioppolo’s deposition in October 2012, indicated that Ms. Young could be employed at a sedentary level. As a result of these differing medical opinions, the City requested an IME in October 2012, which was performed on December 10, 2012. After the IME report, the City reinstated benefits on January 23, 2013.
Upon our thorough review of the record, we find that the OWC was manifestly erroneous in its finding that the City had not reasonably controverted Ms. Young’s claims for benefits. While Dr. Nyboer found Ms. Young to be totally and permanently disabled in his May 16, 2012 report, Dr. Ioppolo examined Ms. Young two weeks later and was still of the opinion that she was able to be gainfully employed. After Dr. Ioppolo’s deposition of October 9, 2012, the City requested an IME because of the conflicting medical opinions regarding Ms. Young’s ability to return to some type of sedentary work. Thereafter, after receiving Dr. Awasthi’s IME report, the City reinstated Ms. Young’s benefits. *1078 __|_nBased on the factual and medical information the City possessed, the City had an articulable and objective reason to deny benefits until Ms. Young’s employability could be determined.[4] Accordingly, we conclude that the OWC erred in imposing penalties and attorney fees against the City pursuant to LSA-R.S. 23:1201F, and we reverse that portion of the judgment.

Answer to the Appeal

Ms. Young has answered the appeal seeking attorney fees for the work done on appeal of this matter. This court has held that such an award is appropriate when the employer appeals, obtains no relief, and the appeal has necessitated additional work for the claimant’s counsel, provided the claimant properly requests the increase. Pitre, 102 So.3d at 824. Considering that the City has been partially successful on appeal, we decline to award additional attorney fees.
CONCLUSION
For the above and foregoing reasons, we reverse that portion of the May 16, 2014 judgment imposing penalties and attorney fees against the City of Gonzales. In all other respects, the judgment is affirmed. Costs of this appeal shall be assessed equally between the parties.
JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.

. Louisiana Revised Statutes 23:1123 provides:
If any dispute arises as to the condition of the employee, or the employee's capacity to work, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.

. There had been some discussion of a mul-tidisc lumbar fusion being performed in the future, although Ms. Young is hesitant regarding any future surgical intervention.

. Louisiana Revised Statutes 23:1201F provides, in pertinent part:
F. Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section ... shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the-merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.... Penalties shall be assessed in the following manner:
[[Image here]]
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

. Prior to the termination of benefits and for at least some time following the termination, there were Facebook postings showing Ms. Young in active leisure activities. Although the OWC found that the Facebook postings were not determinative of Ms. Young’s ability to be employed, the postings provided an additional factual basis considered by the City pertaining to her employability.