David THIBODAUX, Jr.

v.

GRAND ISLE SHIPYARD, INC., et al

NO. 2016–CA–0583

Court of Appeal of Louisiana, Fourth Circuit.

DECEMBER 21, 2016

Charlsey J. Wolff, WOLFF & WOLFF, 2800 Veterans Memorial Blvd., Suite 204, Metairie, LA 70002, COUNSEL FOR PLAINTIFF/APPELLEE

Brian T. Carr, Lindsey M. Soboul, BRIAN T. CARR & ASSOCIATES, 4636 Sanford Street, Suite 100, Metairie, LA 70006, COUNSEL FOR DEFENDANT/APPELLANT

(Court composed of Chief Judge James F. McKay, III, Judge Edwin A. Lombard, Judge Madeleine M. Landrieu)

Judge Edwin A. Lombard

Grand Isle Shipyard, Inc. ("GIS"), and its insurer, Gray Insurance Company ("Gray"), collectively "the Appellants," seek review of the March 2, 2016 judgment of the Office of Worker's Compensation ("OWC") awarding the Appellee, David Thibodaux, Jr., supplemental earnings benefits, medical payments, penalties, attorneys' fees and costs. Finding that the

judgment of the OWC is neither manifestly erroneous nor clearly wrong, we affirm.

This appeal involves Mr. Thibodaux's Disputed Claim for Compensation stemming from an injury he allegedly sustained in the course and scope of his employment on the afternoon of June 24, 2013. On said date, Mr. Thibodaux was employed as a truck driver by GIS, which is located in Larose, Louisiana.[1] Mr. Thibodaux was operating an 18–wheeler in the Lafarge yard in Isabel, Louisiana, where he was picking-up sand for GIS. While driving in the Lafarge yard, Mr. Thibodaux's truck stalled in a sand-filled pothole through which he had attempted to drive. The front axle of the 18–wheeler broke as result of hitting the pothole.

Mr. Thibodaux testified that the 18–wheeler bounced around while it was stuck in the pothole. He further explained that he was jostled in the cabin of the 18–wheeler striking his left arm on an arm rest. Ultimately, he succeeded in changing gear and stabilizing the vehicle. The operator of the Lafarge yard towed the 18–wheeler out of the hole. Mr. Thibodaux testified that he contacted his supervisor, Andrew Dufrene, to inform him that the 18–wheeler was inoperable. Mr. Dufrene, he explained, instructed him to have the vehicle towed outside of the Lafarge yard and that mechanics would be dispatched. Mr. Thibodaux returned to Larose with the mechanics from the Lafarge yard.

Mr. Thibodaux reported to work the following day. He alleges that within a day or two after the accident he advised Mr. Dufrene that he was injured as a result of the June 24th accident and requested to be sent to a doctor because he was experiencing pain in his neck, left shoulder and left ear. He testified that Mr. Dufrene failed take any action. The Appellants and Mr. Dufrene refute this claim. The parties stip-

1. Mr. Thibodaux was hired by GIS in February 2011.

ulated that the last day that Mr. Thibodaux worked was July 17, 2013. They further stipulated that eight days later, on July 25, 2013, Mr. Thibodaux was terminated by GIS. Mr. Thibodaux had not filed a workers' compensation claim before and testified that he was not informed by anyone at GIS how to do so.

Following the accident and just prior to his termination, on July 18, 2013, Mr. Thibodaux sought medical treatment from his primary care physician, Dr. Gary Birdsall. Dr. Birdsall had been his primary care physician for ten years. Presenting for treatment complaining of left ear pain and neck pain, he was diagnosed as having neck pain and a neck spasm. Dr. Birdsall prescribed pain medications, Naprosyn and Skelaxin, to Mr. Thibodaux. Mr. Thibodaux missed several days of work after receiving his medication and was terminated during this period. Mr. Thibodaux testified that he unable to afford further medical treatment.

On August 1, 2013, Mr. Thibodaux was treated for neck pain by Dr. Brent Tatford, an emergency room physician at the Leonard J. Chabert Medical Center in Houma, Louisiana. In his deposition testimony, Dr. Tatford explained that Mr. Thibodaux relayed that his neck pain began after a car accident that had occurred a year prior to his visit.[2] He further testified that Mr. Thibodaux stated that for three months he had experienced pain radiating down his left arm to his fingers.

Dr. Tatford performed a physical exam; ordered an x-ray of Mr. Thibodaux's C–spine; gave him an I.M. steroid injection;[3] ordered an MRI of his neck and an EMG of his left arm; and executed a referral to neurology for his radicular symptoms. The MRI was not performed and the EMG showed normal results. Dr. Tatford further testified that the x-ray results showed Mr. Thibodaux had degenerative joint disease at the C5–C6 and C6–C7 levels. Dr. Tatford prescribed pain medications, Methocarbamol and Tramadol, to Mr. Thibodaux.

On February 7, 2014, counsel for Mr. Thibodaux sent correspondence to Edward Levert, an adjuster for Gray, advising that Mr. Thibodaux was in need of medical treatment and indemnity benefits. Mr. Levert replied via facsimile that the correspondence sent on Mr. Thibodaux's behalf failed to identify Mr. Thibodaux's employer, the date and nature of his injury, and omitted relevant facts and medical reports. Mr. Levert further explained that he would need such information in order to evaluate Mr. Thibodaux's request. On February 26, 2014, counsel for Mr. Thibodaux supplied Mr. Levert, via facsimile, with the name of his employer and the location of the accident, and submitted a Choice of Physician Form requesting treatment from an orthopedic surgeon. On the same date, Mr. Levert responded via e-mail that he still needed the date of the accident and requested to take Mr. Thibodaux's recorded statement in order to proceed with his evaluation of the claim. Thereafter, no further correspondence was exchanged between the parties.[4]

2. Additionally, Mr. Thibodaux testified that in 2012, while in the course and scope of his employment, he was injured as a result of being rear-ended by another driver. Although there was a police report for the 2012 accident, Mr. Thibodaux testified that GIS did not prepare a first report of injury despite the fact that he reported the accident to Mr. Dufrene. He further testified that after relating complaints of neck pain and requesting medical treatment, he was ultimately sent by Mr. Dufrene to a company doctor, who diagnosed him with whiplash.

3. This is a steroid injection into a muscle.

4. Mr. Thibodaux avers that he could not remember that date of the accident, which is why he did not supply the date to Mr. Levert.

Mr. Thibodaux filed a Disputed Claim for Compensation seeking medical and indemnity benefits on June 16, 2014. In October 2014, he began receiving medical treatment from Louisiana Primary Care Consultants ("LPCC"), under the care of Dr. Norman Ott. Dr. Ott placed Mr. Thibodaux on light duty status and diagnosed him as having a cervical strain, left shoulder radiculopathy and left shoulder sprain.

Trial was held on February 16, 2016. In support of his claim, Mr. Thibodaux testified and produced the medical records from LPCC, where he received the majority of his post-accident treatment. The parties stipulated that Mr. Thibodaux's testimony would have been corroborated by his sister and father, Charmaine Rogers and David Thibodaux, Sr., respectively. Messrs. Dufrene and Levert testified on behalf of the Appellants, who also introduced the depositions of Doctors Birdsall and Tatford into evidence with their respective medical records.

Following the trial, the OWC rendered judgment in favor of Mr. Thibodaux and against the Appellants. The OWC held that Mr. Thibodaux sustained his burden of proof regarding accident, injury and disability in connection with his June 24, 2013 work-place accident. The OWC further reasoned that Mr. Thibodaux is entitled to supplemental earnings benefits at zero earning capacity from July 25, 2013 to February 16, 2016. Additionally, the OWC held that his treatment with Dr. Ott and LPCC be authorized, and that the Appellants pay the medical bills for the providers associated with Mr. Thibodaux's treatment, as well as for his future medical treatment. The OWC further held that the Appellants failed to reasonably controvert Mr. Thibodaux's claim. The Appellants were ordered to pay $4,000 in penalties, $4,000 in attorneys' fees, and were assessed with all costs. The OWC adopted Mr. Thibodaux's post-trial memorandum as its Reasons for Judgment.

This timely appeal by the Appellants followed. The Appellants raise five assignments of error on appeal:

1. The OWC erred in finding that Mr. Thibodaux met his burden at trial of proving that he sustained injuries as a result of a work-related incident;

2. The OWC erred in finding that Mr. Thibodaux is entitled to a supplemental earnings benefit at zero earning capacity from July 25, 2013 to February 16, 2016, when he was never restricted from returning to work;

3. The OWC erred in finding that the Appellants failed to authorize treatment and pay the medical bills submitted from Dr. Ott for Mr. Thibodaux's treatment when Mr. Thibodaux never requested that any medical treatment be authorized and never submitted any medical bills to GIS for payment;

4. The OWC erred in finding the Appellants failed to reasonably controvert Mr. Thibodaux's claim; and

5. The OWC erred in awarding Mr. Thibodaux $4,000 in penalties, $4,000 in attorneys' fees and assessing the Appellants with all costs.

## Standard of Review

Appellate courts apply the manifest error-clearly wrong standard in workers' compensation cases. *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96–2840, p. 6 (La. 7/1/97), 696 So.2d 551, 556. "In applying the manifest error standard, the appellate court must determine not whether the fact finder was right or wrong, but whether the fact finder's conclusion was a reasonable one." *Hahn v. X–Cel Air Conditioning, Inc.*, 12–0236, p. 4 (La.App. 4 Cir. 1/9/13), 108 So.3d 262, 266. "If the factfinder's findings are reasonable

in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Baker v. Harrah's*, 15–0229, p. 6 (La.App. 4 Cir. 3/9/16), 190 So.3d 379, 386.

Nevertheless, when legal error interdicts the fact-finding process in a workers' compensation proceeding, the *de novo*, rather than the manifest error, standard of review applies. *Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp.*, 11–0179, p. 3 (La.App. 4 Cir. 6/29/11), 70 So.3d 988, 990. "Likewise, interpretation of statutes pertaining to workers' compensation is a question of law and warrants a *de novo* review to determine if the ruling was legally correct." *Id.*

**Lack of Evidence to Support Mr. Thibodaux's Claim of Sustaining a Work–Related Injury**

The Appellants assert that Mr. Thibodaux failed to carry his burden of proving at trial that his injuries arose out of and in the course of his employment, under La. Rev. Stat. 23:1031(A).[5] The Appellants assert that at trial Mr. |₇Thibodaux relied upon his own self-serving testimony in support of his claim and refuted the deposition testimony of his two treating physicians.

The Appellants aver that while an injured employee's testimony can provide the sole support to discharge the burden of proof, two requirements must be met: 1) no other evidence discredits or casts serious doubt upon the employee's version of the incident; and 2) the employee's testimony is corroborated by the circumstances following the alleged incident. *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 361 (La. 1/17/92). They aver that in the instant matter Mr. Thibodaux's testimony is insufficient to carry his burden of proof considering the amount of evidence they presented controverting his claims. Moreover, Mr. Thibodaux, they argue, failed to present evidence to corroborate his testimony.

The Appellants refute Mr. Thibodaux's assertion that he was injured in the course and scope of his employment, contending instead that medical testimony adduced at trial indicates he suffered from preexisting injuries. They further claim that despite Mr. Thibodaux's testimony that he repeatedly called his supervisor, |₈Mr. Dufrene, to discuss his injuries, Mr. Thibodaux was unable to produce phone records evidencing that said calls were made to Mr. Dufrene.

---

5. La. Rev. Stat. 23:1031, entitled *Employee's right of action; joint employers, extent of liability; borrowed employees*, provides in pertinent part:

1. If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
2. In case any employee for whose injury or death payments are due is, at the time of the injury, employed and paid jointly by two or more employers subject to the provisions of this Chapter, such employers shall contribute to such payments in proportion to their several wage liabilities to the employee; but nothing in this Section shall prevent any arrangement between the employers for different distribution, as between themselves, of the ultimate burden of such payments. If one or more but not all the employers are subject to this Chapter, then the liability of such of them as are so subject shall be to pay that proportion of the entire payments which their proportionate wage liability bears to the entire wages of the employee; but such payment by the employers subject to this Chapter shall not bar the right of recovery against any other joint employer.

GIS, the Appellants assert, tried to reach Mr. Thibodaux, following the alleged accident to find out when he was returning to work, but to no avail. The Appellants further argue that although Mr. Thibodaux claimed that he told several of his co-workers about the accident, he did not present any of these individuals to corroborate his testimony.

Moreover, the Appellants rely upon the testimony of Doctors Birdsall and Tatford to rebut Mr. Thibodaux's claims that he was injured in a work-related accident because both doctors testified that Mr. Thibodaux did not report that he was involved in an accident in June 2013. The Appellants contend that the testimony and medical records of the doctors contradict the testimony of Mr. Thibodaux. Mr. Thibodaux, they allege, never explained to Dr. Birdsall what caused his pain. Dr. Birdsall also testified that he treated Mr. Thibodaux in August 2004 for a muscle spasm, and he believed that Mr. Thibodaux's treatment in July 2013 was related to another muscle spasm.

Furthermore, the Appellants point out that Dr. Tatford's testimony and medical records indicate that Mr. Thibodaux complained of neck pain resulting from an automobile accident that occurred one year prior to his visit. Dr. Tatford also testified that Mr. Thibodaux complained of pain that radiated down his left arm that began three months prior to his visit, which predates the alleged work incident. Dr. Tatford ultimately diagnosed Mr. Thibodaux as having degenerative joint disease. He was released from treatment and given a return to work certificate. Also, the EMG requested by Dr. Tatford came back negative. The Appellants aver that Mr. Thibodaux, in response, challenged the findings of both doctors at trial and attacked the quality of his treatment as well as the EMG results. Consequently, they aver that

Mr. Thibodaux's assertions that he notified GIS and his physicians that he suffered from a work-related injury are unsubstantiated. They further assert that the lack of corroborating testimony from his health care providers and his employer reflects that he is unable to meet his burden of proving that he was injured as a result of the alleged June 24th accident.

■ The OWC in the instant matter was presented with conflicting testimony regarding the June 24, 2013 accident. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989).

Mr. Thibodaux testified that he suffered from neck and left arm pain that progressively worsened after his work-related accident. The parties stipulated that his sister and father would corroborate his testimony regarding such facts. He further presented his medical records from LPCC, where he received treatment from October 10, 2014, through November 24, 2014.

Although, the testimony and medical records of Doctors Birdsall and Dr. Tatford do not reflect that Mr. Thibodaux reported that he sustained injuries from a work-related accident, they do evidence that he was suffering from pain following the accident. This is consistent with the complaints of pain he experienced while treating with Dr. Ott, who treated Mr. Thibodaux for the longest length of time post-accident. We further note that testimony was adduced at trial that Mr. Thibodaux was injured and diagnosed as having whiplash resulting from a 2012 car accident that occurred while he was driving an 18–wheeler in the course and scope of

his employment with GIS.[6] The OWC may have reasonably determined that Mr. Thibodaux's neck pain was aggravated as a result of the June 2013 accident. Prior to the 2013 accident, there is no evidence that Mr. Thibodaux was symptomatic of pain that interfered with his working ability, as compared to his post- 2013 accident complaints of pain.

Mr. Thibodaux's LPCC medical records show that he reported that he was injured in a work-related auto accident. His chief complaints of pain were primarily that he was experiencing pain on the left side of his body in his arm, ear, neck, shoulder and upper back. Dr. Ott diagnosed him as having a cervical strain, left shoulder radiculopathy and left shoulder sprain. He further instructed Mr. Thibodaux that he was being put on light duty status, could not drive an 18-wheeler nor lift more 20 pounds.

The OWC further adopted as its Reasons for Judgment Mr. Thibodaux's post-trial memorandum, wherein Mr. Dufrene's credibility was questioned. Mr. Dufrene portrayed Mr. Thibodaux as an employee who consistently missed work and further, that he never reported his work-related accidents of 2012 and 2013 to him. Mr. Dufrene further testified that Mr. Thibodaux did not request medical treatment for his injuries. Mr. Dufrene admitted when questioned by the OWC judge, that Mr. Thibodaux could have been injured while the 18-wheeler bounced in the soft-sand. It is undisputed by the parties that the accident caused the front axle of the 18-wheeler to break.

Considering the testimony of the witnesses and the medical records presented, the OWC's determination that Mr. Thibodaux met his burden of proving that he sustained a personal injury arising out of and in the course of his [11]employment, under La. Rev. Stat. 23:1031(A), was not manifestly erroneous or clearly wrong. The OWC's reliance upon Mr. Thibodaux's testimony and other relevant medical records was not misplaced as there was a lack of evidence that discredited Mr. Thibodaux or casted serious doubt upon his version of the incident. Furthermore, the circumstances of the incident, *i.e.*, the broken axle and his repeated attempts to seek medical treatment following the incident, were sufficient for the OWC to determine that his testimony was corroborated. *See Bruno, supra.* This assignment of error is without merit.

**Improper Award of Supplemental Earnings Benefits**

■ In their second assignment of error, the Appellants' challenge Mr. Thibodaux's award of a supplemental earnings benefit at zero earnings capacity. They aver that Mr. Thibodaux provided insufficient information of his claim between the time he allegedly sustained his work-related injury and the time he filed his Disputed Claim for Compensation. Lacking required documentation of his medical treatment and billing and considering his refusal to make a recorded statement as requested by Mr. Levert, the Appellants aver that through no fault of their own they were provided with insufficient documentation to process his claim.

Additionally, the Appellants aver that the first time Mr. Thibodaux's claims came to the attention of Gray was in February of 2014, when Mr. Levert received correspondence that Mr. Thibodaux was in need of medical treatment, but said correspondence allegedly did not provide the date of injury, the nature of the injury nor the name of his employer on the date of injury. The adjuster, they assert, was later

---

**6.** See footnote 2, *supra.*

provided with the location of where the accident occurred, but no other details. Medical records and other pertinent information, they aver, were requested, but to no avail. Medical records were not obtained by the Appellants until the discovery phase of the instant matter. They also contend that neither medical bills nor Form 1010s were submitted by Mr. Thibodaux for authorization. The Appellants further assert that four months prior to filing his Disputed Claim for Compensation, Mr. Thibodaux, through his counsel, ceased communications.

Moreover, the Appellants further aver that the OWC's determination that Mr. Thibodaux was entitled to supplemental earnings based upon zero earning capacity from July 25, 2013 to February 16, 2016, was unwarranted because none of his treating physicians completely restricted his ability to work. They allege that he failed to carry his burden of proof that he is unable to earn wages equal to 90% percent or more of the wages he earned before he sustained job related injuries. *Palisi v. City of New Orleans Fire Dept.*, 95–1455, p. 25 (La.App. 4 Cir. 3/12/97), 690 So.2d 1018, 1043. Also, they assert that he failed to comply with the statutory requirement of La. Rev. Stat. 23:1221(3)(f) to timely report his supplemental earnings benefit loss to GIS thereby precluding an award of a supplemental earnings benefit.

Lastly, they contend that Mr. Thibodaux failed to prove by clear and convincing evidence that he is unable to perform light duty work solely as a consequence of substantial pain in order to be deemed incapable of performing the employment offered.[7] Employees who have been released by a treating physician to engage in light duty work and have refused the same by their employer are not entitled to supplemental earnings benefits, they contend.

The Appellants aver that none of the doctors who treated him restricted him from returning to gainful employment. Dr. Ott is the only doctor who placed a restriction on Mr. Thibodaux's employment capabilities, restricting him to light duty work, advising him not to lift over twenty pounds, and to avoid driving commercial vehicles. Mr. Thibodaux, they assert, has not worked in the past three years in any capacity. They further rely upon his testimony that he never once inquired or applied to any establishment for possible employment positions and never even attempted to pass a pre-employment physical. Based on these facts, the Appellants contend that a zero earning capacity award is improper and should be reversed.

In determining whether a workers' compensation claimant is entitled to supplemental earnings benefits, a court must weigh all evidence, medical and lay, to determine if claimant has met his or her burden of proof. *Dupree v. Ace Home & Auto*, 96–745, p. 7 (La.App. 3 Cir. 12/26/96), 685 So.2d 683, *writ denied*, 97–0283 (La. 3/27/97), 692 So.2d 393 [citation omitted]. Initially, the employee seeking supplemental earnings benefits in a workers' compensation proceeding bears the

---

7. La. Rev. Stat. 23:1221 (c)(ii) provides:

For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.

The burden on a claimant is not "a mere preponderance of the evidence, but one of 'clear and convincing evidence' where the disability is 'solely as a consequence of substantial pain.'" *Duhon v. Holi Temporary Services, Inc.*, 97–0604, p. 6–7 (La.App. 4 Cir. 10/1/97), 700 So.2d 1152, 1155).

burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn 90% or more of his average pre-injury wage under the facts and circumstances of the individual case. *Poissenot v. St. Bernard Parish Sheriff's Office*, 09–2793, p. 5 (La. 1/9/11), 56 So.3d 170, 174. Whether a workers' compensation claimant's pain is substantial enough to be disabling, as required for supplemental earnings benefits, is a question of fact that must be determined according to circumstances of each case. *Rosella v. Dede's Wholesale Florist*, 607 So.2d 1055, 1062 (La. App. 3 Cir. 1992) [citation omitted]. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage." *Daniels v. Keller Supply, Inc.*, 02–2767, p. 7 (La.App. 4 Cir. 8/6/03), 854 So.2d 416, 421 [citation omitted].

We find the Appellants' reliance upon the testimony of Doctors Birdsall and Tatford misplaced as both doctors treated Mr. Thibodeaux once. The medical records from the provider who treated Mr. Thibodaux for the longest period of time following the June 2013 accident, Dr. Ott, reveal that he was in serious pain from his neck, arm and back injuries. Furthermore, it was established at trial that Mr. Thibodaux possesses limited education and that his sole occupation over the years has been that of a truck driver. Thus, considering the physical limitations that Dr. Ott placed upon him, Mr. Thibodeaux could not continue to support himself as a truck driver because he was instructed not to drive. Also, he was not offered other positions by GIS as he was fired while he was seeking treatment at his own expense.

We also note that although Dr. Tatford issued a light duty work release form to Mr. Thibodaux, Dr. Tatford testified that he did not recall completing the form. Moreover, Mr. Thibodaux had already been fired by GIS when that form was executed. In light of Mr. Thibodaux's persistent post-accident complaints of pain, his use of pain medications that affected his ability to operate an 18–wheeler, the activity restrictions placed upon him by Dr. Ott, and that GIS had already released him prior to offering him other employment, we find no manifest error in the OWC's determination that Mr. Thibodaux met his burden of proof in establishing his claim for a supplemental earnings benefit.

Additionally, we find the Appellants' argument that Mr. Thibodaux should be precluded from receiving a supplemental earnings benefit because he failed to timely report his claim, under La. Rev. Stat. 23:1221(3)(f),[8] to GIS to be meritless. As the Third Circuit explained, when it adopted a district court's Reasons for Judgment, the 30–day period was not intended by the Louisiana Legislature to be preemptive:

"...[I]it does not appear that the Legislature intended the 30 day period to be preemptive, after which time no claim

---

8. La. Rev. Stat. 23:1221(3)(f) states:

Any compensable supplemental earnings benefits loss shall be reported by the employee to the insurer or self-insured employer within thirty days after the termination of the week for which such loss is claimed. The director shall provide by rule for the reporting of supplemental earnings benefits loss by the injured worker and for the reporting of supplemental earnings benefits and payment of supplemental earnings benefits by the employer or insurer to the office and may prescribe forms for such reporting. The office, upon request by the employer or insurer, shall provide verification through unemployment compensation records under the Louisiana Employment Security Law of any claimed supplemental earnings benefits loss and shall obtain such verification from other states, if applicable.

could be asserted. Instead, it is apparent that the reporting period is included so that the employer or its insurer can determine the appropriate subsidy, if any, to be applied. Where the plaintiff is unemployed, then the necessity for such reporting would seem to be academic. The only requirement for the employer to determine the amount payable would be notice that the plaintiff is unemployed..."

*Smith v. Georgia Cas. & Sur. Co.*, 503 So.2d 720, 723 (La. App. 3rd Cir. 1987).

In the instant matter, GIS was well aware that Mr. Thibodaux was unemployed having fired him. Furthermore, the OWC found Mr. Thibodaux's testimony that he reported his injuries to GIS and requested medical treatment within days of the June 2013 accident to be credible. We find this assignment of error to be without merit.

### Erroneous Award of Penalties and Attorney's Fees as Mr. Thibodaux's Claim was Reasonably Controverted

Furthermore, in their remaining assignments of error, the Appellants maintain that as a result of Mr. Thibodaux's refusal to provide Mr. Levert, the insurance adjuster, with medical bills for payment or Form 1010s for medical treatment authorization, his award of penalties and attorney's fees should also be reversed. They also contend that no penalties or attorneys' fees are due because they reasonably controverted his claim, pursuant to La. Rev. Stat. 23:1201. Nonpayment in this matter, they maintain, resulted from Mr. Thibodaux's noncompliance with the claims process.

They argue that Mr. Levert repeatedly requested medical information and bills from Mr. Thibodaux, who never provided the requested documentation. Mr. Thibodaux further declined to make a recorded statement. Thus, the Appellants argue, Gray had no control over whether Mr. Thibodaux would comply so that Mr. Levert could process his claim. Consequently, the Appellants maintain that they should not be penalized for Mr. Thibodaux's inaction.

Mr. Thibodaux responds that in the matter *sub judice*, "[m]edical benefits were denied unreasonably" and his medical records and the circumstantial evidence in this case demonstrate a reasonable probability of a causal connection between his workplace accident and the beginning of his disabling condition. His worker's compensation case involves the Appellants' refusal to pay medical benefits; thus, under La. Rev. Stat. 23:1201F(2),[9] he argues

9. La. Rev. Stat. 23:1201(F), provides in pertinent part:

F. Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:

(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers'

that the only way that the Appellants could not be assessed penalties and attorney's fees for failing to timely pay medical benefits is if the claim is either reasonably controverted or if nonpayment results from conditions over which the Appellants had no control. *Payton v. Sears, Roebuck & Co.*, 15–0311, p. 11 (La.App. 4 Cir. 2/17/16); 187 So.3d 84, 90.

He asserts that La. Rev. Stat. 23:1201E(1) states that "medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof...." He maintains that his claim was denied outright by GIS.[10]

Mr. Thibodaux contends that at trial he met his burden of proving an accident occurred during the course and scope of his employment resulting in injuries to his left neck, shoulder and arm, which he reported to Mr. Dufrene. He was never sent to a doctor by GIS. The Appellants, he argues, were unable to refute his claim with credible evidence. GIS failed to rebut the presumption of causation. Mr. Thibodaux also attacks the credibility of Mr. Dufrene's testimony. Furthermore, Mr. Dufrene corroborated Mr. Thibodaux's testimony that the bouncing that Mr. Thibodaux experienced while the truck was stalled in the pot hole could have been significant.

"A claim is reasonably controverted when the employer has sufficient factual and/or medical information to reasonably counter evidence presented by the claimant." *Rixner v. E. Jefferson Gen. Hosp.*, 15–143, p. 20 (La.App. 5 Cir. 9/23/15), 176 So.3d 677, 688, *writ denied*, 15–1935 (La. 11/30/15), 184 So.3d 35 (*quoting Brown v. Texas–LA Cartage, Inc.*, 98–1063 (La. 12/1/98), 721 So.2d 885, 890). The Fifth Circuit further explained the application of the reasonable controverted standard:

Whether an employer has failed to reasonably controvert a claim is a question of fact and is subject to the manifest error standard of review. *Hayward v. Boh Bros. Constr. Co., LLC*, 14–860, 13 (La.App. 5 Cir. 3/25/15); 169 So.3d 622. An employer should not be liable for penalties for taking a close factual or legal question to court for resolution. *Young v. City of Gonzales*, 14–1299 (La. App. 1 Cir. 3/12/15), 166 So.3d 1070, 1077. While the Louisiana Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. *Id.*

*Id.*, 15–143, p. 20, 176 So.3d at 688–89.

Furthermore, "[t]o determine whether a claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether an employer or its insurer engaged in a non-frivolous legal dis-

---

compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

**10.** Section E of La. Rev. Stat. 23:1201, entitled *Time and place of payment; failure to pay timely; failure to authorize; penalties and attorney fees,* provides:
E. (1) Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof, if the provider of medical services is not utilizing the electronic billing rules and regulations provided for in R.S. 23:1203.2.

pute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time it refused to pay all or part of the benefits owed." *Verges v. AmTrust N. Am. Cmty. Leaders Advocacy for Success*, 16–0203, p. 5 (La.App. 4 Cir. 8/31/16), 198 So.3d 1267, 1271, *reh'g denied* (09/12/16) (citing *Brown v. Texas–LA Cartage, Inc.*, 98–1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890). "An employer's failure to authorize a medical procedure for an employee otherwise eligible to receive workers' compensation is deemed to be the failure to furnish benefits, thus triggering the penalty provisions of La. R.S. 23:1201." *Id.*, 16–0203, pp. 5–6, 198 So.3d at 1271 (citing *Authement v. Shappert Engineering*, 02–1631 (La. 2/25/03), 840 So.2d 1181).

In the matter *sub judice*, Mr. Thibodaux argues that he is entitled to benefits based upon his initial report of his work-related injuries to Mr. Dufrene, who disputed this assertion in his testimony. The Appellants, however, rely upon Mr. Thibodaux's failure to follow-up with Mr. Levert in the claims process as their basis for reasonably controverting his claim.

As previously discussed, Mr. Dufrene's credibility was called into question by Mr. Thibodaux, whose reasoning was adopted by the OWC. Furthermore, Mr. Thibodaux established that GIS and Mr. Dufrene had a history of not filing incident reports for work-related accidents as evidenced by Mr. Dufrene eventually authorizing Mr. Thibodaux to be treated by a company doctor for his whiplash injury stemming from the 2012 work-accident he failed to document. As previously stated, Mr. Thibodaux testified that no one at GIS explained how to file a worker's compensation claim.

Moreover, the record also reveals that although Mr. Levert requested the date of the subject accident from Mr. Thibodaux to evaluate his claim, the Appellants had this information in February 2014, during the period when Mr. Levert was communicating with Mr. Thibodaux. An *Employer Report of Injury/Illness*, dated February 27, 2014, which was introduced into evidence, states that Mr. Thibodaux injured himself while driving a truck at the Lafarge yard in Houma and that he has neck and arm pain that resulted from his truck sinking on soft ground, him trying to drive the truck out and breaking the truck's front axle. GIS is listed as his employer. The report further shows that the date of injury was June 24, 2013.

Based upon the foregoing, the OWC could have reasonably determined that Mr. Thibodaux both reported the June 2013 accident and requested medical treatment, which was tacitly denied by the inaction of GIS, who promptly terminated his employment. We find no manifest error in the OWC's determination that the Appellants did not meet the standard for proving they reasonably controverted Mr. Thibodaux's claim. The OWC had a reasonable basis for holding that the Appellants either engaged in a frivolous legal dispute or did not possess factual and/or medical information to reasonably counter the factual and medical information presented by Mr. Thibodaux throughout the time it refused to pay all or part of the benefits owed. This assignment of error is without merit.

**ANSWER TO APPEAL**

Finally, we note that Mr. Thibodaux filed an answer to the instant appeal, which he incorporated within his Appellee's brief of August 9, 2016. However, his answer to the appeal is untimely as it was filed more than 15 days after the lodging of the record, which was lodged on June

10, 2016. La. Code Civ. Proc. 2133(A).[11] Thus, we decline to consider the Answer to Appeal.

## DECREE

For the foregoing reasons, the judgment of the Office of Worker's Compensation Administration is affirmed. The Answer to the Appeal is denied.

**AFFIRMED; ANSWER TO APPEAL DENIED**

11. La. Code Civ. Proc. art. 2133(A), provides in pertinent part:

An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief de-manded, not later than fifteen days after the return day or the lodging of the record whichever is later. Thdee answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.