398 So.2d 1205 (1981)
Eugene SALING
v.
The CITY OF NEW ORLEANS.
No. 12206.
Court of Appeal of Louisiana, Fourth Circuit.
May 5, 1981.
Writ Denied June 22, 1981.
Delbert G. Talley, Deputy City Atty., Salvador Anzelmo, City Atty., New Orleans, for defendant-appellant.
Barker, Bourdreaux, Lamy, Gardner & Foley, Harold J. Lamy, New Orleans, for plaintiff-appellee.
Before GULOTTA, SCHOTT and PEREZ, JJ.
GULOTTA, Judge.
The City of New Orleans appeals from a workmen's compensation award in favor of Eugene Saling, a captain in the New Orleans Fire Department, for permanent and total disability resulting from arteriosclerotic heart disease. We affirm.
Plaintiff began to work with the New Orleans Fire Department as a probation fire fighter in February, 1962 and continued active work until May, 1977 when a circulatory *1206 and nervous disorder in his hand, unrelated to his employment, required that he discontinue working for a time. Saling returned to the fire department the latter part of April, 1978 and was sent to a department training school to undergo a grip test. In the course of the examination plaintiff climbed four flights of stairs and experienced shortness of breath and some pain. The following morning, however, he experienced severe chest pains and was hospitalized from April 29, 1978 to May 9, 1978 for what was diagnosed as an episode of acute coronary insufficiency without evidence of death of the heart muscle. Subsequent testing indicated Saling had arteriosclerosis resulting in significant coronary obstruction. He was referred to a surgeon who performed a triple coronary by-pass operation in July, 1978. It is undisputed that plaintiff is unable to perform any further duties as a fire fighter.
At issue is whether LSA-R.S. 33:2581 entitles Saling to permanent and total workmen's compensation benefits for his heart condition. In this connection the question is whether defendant has heart disease and whether that disease was aggravated, was brought on, or was exacerbated by his fire fighting duties. This statute provides, in pertinent part, that any heart disease developing during a classified fireman's period of employment shall be classified as a disease or infirmity connected with employment and such disease shall be presumed, prima facie, to have developed during employment and to have been caused by, or have resulted from the nature of the work performed, whenever the disease manifests itself anytime after the first five years of employment.[1] In Vincent v. City of New Orleans, 326 So.2d 401 (La. App. 4th Cir. 1976), writ denied, 329 So.2d 760 (La.1976), this court affirmed a judgment awarding workmen's compensation benefits to a fireman who had become disabled from cardio-vascular disease. We stated in Vincent:
"... Our reading of the statute convinces us that a rebuttable presumption exists that the nature of the work caused the disease. Accordingly, the employer bears the difficult burden of proving otherwise and unless affirmative proof is adduced to prove a lack of causation which is, admittedly, very difficult, then the presumption requires that the disabled fireman be entitled to coverage under the Act...."
In written reasons for judgment accompanying the award of permanent and total disability in favor of plaintiff, the trial judge in our case stated:
"There is no proof that the plaintiff had an accident. There is no proof that the plaintiff had a heart attack, or that plaintiff's by-pass surgery was work related.
The defendants', however, have failed to rebut the presumption created by LSA-R.S. 33:2581.
Within the medical knowledge available, the court does not believe it possible to rebut this presumption.
The court believed that the wording of the statute makes it applicable to workmen's compensation cases, after a fireman has been employed for five years, after 1968, even though he was employed before this time."
On appeal, the City contends that Saling began working as a fireman over six years before the effective date of LSA-R.S. *1207 33:2581 and the statute cannot be applied retroactively in his case. The City further argues that the statute was intended to apply only to firemen seeking disability pensions and does not pertain to workmen's compensation claims. Pointing out that the trial judge viewed the presumption created by the statute as irrebuttable, the City further contends that such interpretation denies it equal protection or due process of the law. Alternatively, should the statute apply, the City contends it has successfully rebutted the presumption of causation since medical evidence adduced in the case clearly indicates Saling's arteriosclerosis is unrelated to his work.
At the outset we reject the City's argument concerning the statute's retroactivity, applicability to workmen's compensation, and constitutionality. Even though Saling worked as a fireman before the effective date of the statute, it is undisputed that his heart ailment first manifested itself in 1978, approximately ten years after the passage of the statute. We find no wording in the statute to limit its application to firemen employed after its effective date.
Defendant's argument that LSA-R.S. 33:2581 does not apply to workmen's compensation cases is likewise without merit. Even though the cited statute is not part of the Workmen's Compensation Act, we have invoked its application to workmen's compensation cases. See Vincent v. City of New Orleans, supra. Moreover, the statute provides, in pertinent part, that the affected firemen "shall be entitled to all rights and benefits as granted by the laws of the State of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease...." The Workmen's Compensation Act is one such Louisiana law conferring benefits on employees stricken with occupational disease.
As we recognized in the Vincent case, the presumption created by LSA-R.S. 33:2581 does not violate equal protection. We similarly reject defendant's argument that the statute violates due process. Although the burden imposed on a defendant to show that a fireman's heart condition was not job related is a difficult one, it is conceivable that medical evidence could be adduced in a given factual situation to prove lack of causation. LSA-R.S. 33:2581 is therefore constitutional.
We turn now to the City's contention that it did in fact exculpate itself from the statutory presumption. Dr. Jack Ruli, an internist and physician for the New Orleans Fire Department, was of the opinion that Saling's fire fighting duties over the years constituted an "aggravation factor" accelerating his coronary disease. Dr. Ruli, who had read material on the relationship between the duties of fire fighters and heart conditions, indicated that firemen frequently go from a situation of inaction to very sudden, strenuous activity. This physical and emotional stress is a strain on the heart that could be subjected to further strain by toxic fumes such as carbon monoxide that are present during fires and further deplete the heart's oxygen supply. This witness was of the opinion that such repeated stress over a period of years could have accumulative effect on the heart and that Saling's condition of high blood pressure, obesity, and history of heavy smoking would make him a prime candidate for coronary disease. His repeated fire fighting in addition to this pre-existing condition, according to Ruli, would make for an acceleration of his heart condition.
Dr. John Ochsner, an expert in cardio-vascular surgery, who performed Saling's by-pass operation, was unwilling to place the blame for Saling's heart condition on his occupation. Dr. Ochsner was of the opinion that arteriosclerosis begins to develop at an early age and that it was not unusual for a man such as Saling in his mid-forties with history of hypertension, cigarette smoking and obesity to have developed this condition. This witness was of the opinion that arteriosclerosis was not related to any occupation.
*1208 A third expert medical opinion was furnished through the deposition of Dr. Felix Rabito, Saling's treating physician. He indicated that Saling's cardio-vascular problem was first diagnosed during his hospitalization on April 29 through May 8, 1978 after the episode of chest pain. Dr. Rabito stated that the cause of coronary artery disease is now known but is likely due to hereditary or metabolic factors. According to Dr. Rabito it is not likely that the disease is causally related to employment. He did state however, that a job or life style could be an aggravating factor in an existing disease.
The testimony of Doctors Ochsner and Rabito differs to some extent from Dr. Ruli's concerning Saling's occupation as a cause or aggravation of his heart condition. However, Ochsner and Rabito's opinions are insufficient to overcome the presumption established by LSA-R.S. 33:2581 and bolstered by the testimony of Dr. Ruli.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] LSA-R.S. 33:2581 reads as follows:

"§ 2581. Development of heart and lung disease during employment in classified fire service; occupational disease
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment."