720 So.2d 1283 (1998)
Johnny R. COATS, Plaintiff-Appellee,
v.
CITY OF BOSSIER CITY, Defendant-Appellant.
No. 31164-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1998.
Rehearing Denied December 3, 1998.
*1285 Lunn, Irion, Johnson, Salley & Carlisle by Frank M. Walker, Jr., Shreveport, for Appellant.
C. Daniel Street, Monroe, for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
BROWN, J.
Plaintiff, Johnny R. Coats, a retired firefighter, sought workers' compensation benefits for a service connected occupational disease as set forth under the Firefighter's Heart and Lung Statute, La. R.S. 33:2581. From the judgment in favor of Coats, The City of Bossier City has appealed, arguing that the workers' compensation judge ("WCJ") erred in awarding Coats supplemental earnings benefits ("SEB"). Coats has answered, urging error in the WCJ's calculation of benefits and denial of his claim for penalties and attorney fees. Finding error in the calculation of benefits, we amend the award and as amended affirm.

Factual Background
Coats was a Bossier City fireman for more than 25 years. He worked as a firefighter, driver, captain, and finally served as district fire chief. For the first 21 years of his employment with Bossier City, and occasionally thereafter as chief, Coats actively fought fires.
In May 1991, Coats was diagnosed with hypertension, which was treated with medication. In September 1992, Coats retired from the fire department. He worked for S & D Falco for 14 months before going to work at a local casino. In July 1996, after Coats presented a history of progressive fatigue and breathlessness, a heart catheterization revealed a diffusely diseased right coronary artery with 90% blockage. Because the plaque buildup was diffused or spread throughout the entire artery, surgery was a high risk option. Coats was started on medication and restricted to sedentary work in a smoke-free environment. Because the Isle of Capri Casino was not a smoke-free working environment, Coats was unable to continue his job as a dealer.
Coats filed for workers' compensation benefits under the Fireman's Heart and Lung Statute, which was denied by Bossier City. Thereafter, Coats instituted the instant proceeding. A hearing was held on October 20, 1997. Applying the presumption set forth in the statute, the WCJ awarded SEB and medical benefits, but declined to award penalties and attorney fees.
Bossier City has appealed, asserting that the WCJ erred in awarding SEB to Coats, who had been retired from the fire department for almost four years before the manifestation of his arteriosclerotic condition. Coats, who answered the appeal, urges that the WCJ erred in awarding benefits of $295 per week based upon the statutory maximum at the time of his retirement in 1992, rather than the statutory maximum at the time of his disability, which would have been $330 per week. Coats also contends that the WCJ should have awarded penalties and attorney fees.

*1286 Discussion

Disability
Bossier City argues that Coats did not have a disease or infirmity of the heart and thus, the statute and its presumption were inapplicable.
The Firefighter's Heart and Lung Statute, La. R.S. 33:2581, provides:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years. (Emphasis added.)
This provision, which provides for a service-related occupational injury, although not specifically incorporated within Louisiana's Workers' Compensation Act, La. R.S. 23:1021 et seq., is applicable to workers' compensation cases. McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2d Cir. 1991); Saling v. City of New Orleans, 398 So.2d 1205 (La.App. 4th Cir.1981), writ denied, 401 So.2d 986 (La.1981). Once a disease or condition covered by La. R.S. 33:2581 is found to exist, the applicability of the workers' compensation provisions is resolved and questions attendant to compensation are then decided pursuant to La. R.S. 23:1021 et seq. Meche v. City of Crowley Fire Department, 96-577 (La.App. 3d Cir.02/12/97), 688 So.2d 697, writ denied, 97-0632 (La.04/25/97), 692 So.2d 1088.
By enacting the Heart and Lung Statute, the legislature acknowledged that firemen, as a result of the stress and strain of their work, are predisposed to vascular diseases and heart problems. McCoy v. City of Shreveport Fire Department, 26,181 (La. App.2d Cir.01/25/95), 649 So.2d 103; Rothell v. City of Shreveport, 626 So.2d 763 (La.App. 2d Cir.1993), writ denied, 93-3191 (La.02/11/94), 634 So.2d 379; Landry v. City of New Orleans, 266 So.2d 492 (La.App. 4th Cir.1972).
La. R.S. 33:2581 therefore provides a rebuttable presumption that a firefighter's heart or lung disease or infirmity developed during and as a result of his employment so long as the condition manifests itself after the first five years of employment. The burden then falls on the employer to prove that the disease did not develop during employment and a lack of causation between the disease and the employment. Rothell, supra, citing Vincent v. City of New Orleans, 326 So.2d 401 (La.App. 4th Cir.1975), writ refused, 329 So.2d 760 (La.1976).
The initial burden is on the claimant to show that he has a disease or infirmity of the heart. If so, then the statute provides a rebuttable presumption that shifts the burden to the employer to show that the condition neither developed during nor was caused by the employment. Rothell, supra; Meche, supra.
Bossier City argues that the heart is a separate and distinct anatomic unit and that hypertension and a diseased artery are not infirmities of the heart, but only risk factors that may one day contribute to a heart disease.
The testimony of Dr. Smith, the treating cardiologist, as well as common sense, rejects this argument. Arteries bring blood and therefore oxygen to the heart. Dr. Smith stated that ischemia or lack of blood and oxygen was responsible for Coats' progressive fatigue and breathlessness. Further, Dr. Smith found thickening of Coats' heart muscle because of his hypertension. Clearly, Coats' cardiovascular disease qualifies as a heart condition. The WCJ was not manifestly wrong in finding that Coats suffered from a disease or infirmity of the heart.
*1287 Bossier City further contends that the WCJ erred in applying the presumption set forth in the Heart and Lung Statute because Coats had been retired from the fire department for almost four years when his arteriosclerotic condition was diagnosed. The statute, however, applies the presumption "whenever the (infirmity) is manifested at any time after the first five years." (Emphasis added.)
The presumption created by La. R.S. 33:2581 applies, even though the condition may not manifest itself until after retirement. Rothell, supra. See also Vallelungo v. City of New Orleans, 95-0264 (La.App. 4th Cir.05/01/96), 673 So.2d 1292; Attaway v. City of Natchitoches, 94-813 (La.App. 3d Cir.02/01/95), 651 So.2d 306. The length of time between the manifestation of the infirmity and retirement may be a factor in rebutting the presumption of development and causation during employment. Whether the presumption has been rebutted is a question of fact and the WCJ's finding will not be disturbed in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Dr. Smith, the treating cardiologist, stated in his deposition that he found some thickening of Coats' heart muscle as a result of his hypertension, which developed over a period of time prior to Coats' retirement from the fire department. Furthermore, it was Dr. Smith's opinion that although Coats' arteriosclerotic disease did not fully manifest itself until after his retirement, the process of plaque deposit more probably than not started with his recurrent exposure to smoke, as well as his high blood pressure. According to Dr. Smith, Coats' firefighting activities contributed to his development of arteriosclerosis.
We find no error in the WCJ's conclusion that Bossier City failed to rebut the presumption that Coats' vascular disease and heart problem developed during and was caused by his employment with the fire department. In fact, Bossier City neither had Coats examined by a physician nor offered expert medical testimony that his condition did not have develop during and as a result of his work as a firefighter. Instead, Bossier City argued the inapplicability of the presumption provided by the Heart and Lung Statute to Coats' claim and urged that Coats' family history and long-time smoking habit were the causes of his vascular and heart problems. As noted by this court in Rothell, supra, and the Fourth Circuit in Vallelungo, supra, a claimant is not required to prove that his employment was the only cause of the development of heart disease. It is sufficient that the employment contributed to, accelerated or aggravated the condition. Id.

Calculation of Benefits
Coats contends that the WCJ erred in awarding SEB based upon his wage rate at the time of his retirement from the fire department rather than his wage rate on July 7, 1996, when his heart condition was fully manifested.
La. R.S. 23:1221(3)(a) provides:
For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at the time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
La. R.S. 23:1021(10) defines wages as the average weekly wage at the time of the accident and thereafter goes on to provide methods for calculating a worker's average weekly wage. Coats was not involved in a specific work-related accident causing immediate and obvious physical injury. Instead, he became disabled as a result of heart disease which, although it began prior to his *1288 retirement from the fire department, did not become manifest until some four years later.
The development of heart disease is similar to the onset of many occupational diseases. As noted by the court in White v. Johns-Manville Sales Corporation, 416 So.2d 327 (La.App. 5th Cir.1982), an occupational disease is the result of a series of events often imperceptible in nature which are eventually evidenced in the manifestation of a disability. Thus, in such cases, the date of disability is the correct time in which to determine the compensation rate.
We find that the WCJ erred in calculating Coats' SEB based upon his wages at the time of his retirement in 1992 rather than his wages at the time his disability arose. As noted by counsel, however, because Coats' wage rate, for the purposes of calculating SEB, is in excess of the applicable statutory maximum, he is entitled to weekly benefits in the amount of $330 from July 8, 1996 until October 20,1997, the date of trial, and thereafter pursuant to the law on supplemental earnings benefits. The judgment will be amended accordingly.
Penalties and Attorney Fees
Coats urges error in the WCJ's failure to award penalties and attorney fees. The determination of whether an employer should be cast with penalties and attorney fees in a workers' compensation action is essentially a question of fact and the WCJ's finding should not be disturbed on appeal absent manifest error. Oliveaux v. Riverside Nursing Home, 29,419 (La.App.2d Cir.04/02/97), 691 So.2d 340; Smith v. Tudor Construction, 25,783 (La.App.2d Cir.05/04/94), 637 So.2d 666.
Bossier City, through cross-examination of Coats and his medical experts, although unable to establish that claimant's heart disease was unrelated to his employment with the fire department, did show that his disabling condition was causally related to other factors, such as his subsequent employment, a family history of heart disease and his smoking 1 ½2 packs of cigarettes a day for approximately 20 years.[1] Furthermore, we note that the WCJ in her oral reasons for judgment, opined that absent the strong statutory presumption of La. R.S. 33:2581, the evidence would probably have been insufficient to support an award of benefits in this case. We find no error in the WCJ's determination that an award of penalties and attorney fees was not warranted.

Conclusion
For the reasons set forth above, the judgment is AMENDED as follows:
Defendant, Bossier City, is ordered to pay plaintiff, Johnny R. Coats, supplemental earnings benefits of $330 per week from July 8, 1996 through October 20, 1997, and thereafter in accordance with law, together with legal interest from the due date of each payment until paid.
In all other respects, the judgment is AFFIRMED at defendant's cost.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent. The plaintiff, who had been retired from the fire department for almost four years, first manifested symptoms of his heart disease in 1996 at age 52. At that time, he was a six-foot, 250-pound, pack-and-a-half per day smoker with a family history of hypertension.
While plaintiff had been diagnosed with high blood pressure before leaving the fire department in 1992, he had no symptoms of a heart condition prior to 1996. The worker's compensation judge, in discussing the testimony of Dr. Smith, specifically ruled that there was insufficient evidence linking the development of plaintiff's heart disease to his prior job as a fireman. The WCJ ruled:
"* * * There is no affirmative evidence and testimony that would substantiate recovery absent application of 2581.
Dr. Smith is very clear in that the major contributing factors were family history, diabetes, high blood pressure, cholesterol, smoking history. And he was very vague at best, which was at Page 23, with any *1289 connection between them. He always says could, maybe, possibly. He uses a little probable but only in connection with the origination of the disease, not the development of the disability itself and not the development of the symptoms. Dr. Cox by far doesn't even go that far, and he says I don't know and I can't even say anything about the smoke that he encountered at the Fire Department.
So if you do not apply the statute, I don't believe that there's sufficient evidence here. Applying the statute, I basically read the jurisprudence to mean it doesn't matter. All the coulds and maybes and possiblies are interpreted to be enough. That then shifts the burden to the City.
In this case the City has certainly shown that the most significant disability and stress was related to other factors, including subsequent employment and other conditions in his personal life...."
The WCJ based her decision solely upon a presumption in the statute, relying primarily on this court's ruling in Rothell v. City of Shreveport, 626 So.2d 763 (La.App. 2d Cir. 1993). I disagree with her view of that case and believe that a correct statutory interpretation does not indicate that the legislature's aim for the five-year presumption was to deal with heart-diseased firemen with a lengthy period of retirement, creating a significant break between the time of their work as firemen and the time of the symptoms of development of heart disease.
Rothell was a situation where a fireman with 42-1/2 years of service, retired on March 1, 1990 and had a heart attack on July 31, 1990 resulting in six bypass surgeries. The time period between the retirement from employment as a fireman and the heart attack was, therefore, medically insignificant, and both the lower court and this court presumed that the Act applied shifting the burden to the City to prove that the employment was not a cause in fact of the heart attack. Neither the facts of the case nor the arguments of the City caused the court to deal with the issue presented here.
The Attaway case cited by the majority also involved a heart condition which fully manifested itself shortly after retirement, and in the Vallelungo case, serious symptoms developed during the time of the fireman's employment leading to his retirement. In both cases the courts did not have to rely on any presumption because the evidence showed that the disease began to "develop" during the period of employment although disability occurred after retirement. Once shown to have developed at least in part during a period of employment, the first sentence of the statute mandates coverage as an occupational disease.
The last sentence of the Heart and Lung Act says:
Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
I would interpret this provision's aim as dealing with the problem of newly hired firemen, with no legislative intent to extend this provision to retired firemen.
A fireman who suffers a heart attack on the job in his first month of service should not get the mandatory benefit of the first sentence of the statute, and a fireman who suffers a heart attack in year four of his employment must prove that his underlying conditions leading to the manifestation of his problem developed within the four-year period. The presumption, that is triggered after five years of employment, is therefore that "development" of the underlying cause of the disease is presumed to have occurred in no greater a period of time than five years prior to the "manifestation" of symptoms. Therefore, once a fireman has five years, the municipality cannot be heard to argue that the disease developed solely because of other factors extending back before employment, such as an undetected congenital heart defect or pre-employment hypertension. The disease which manifests itself by specific heart symptoms is presumed to have been developed through underlying causes while on the job that arose at some time (five years or *1290 less) within the last five years. This presumption does not attempt to pinpoint the time of the development of the underlying cause within the five years.
To the contrary, a five-year tenured fireman, who has ceased employment as a fireman for a significant time period prior to any heart symptoms, must prove, under the first sentence of the Act, the underlying development "during a period of employment." The five-year waiting period for a new fireman should not apply. With mild hypertension and the various intervening factors which can accumulate and contribute to a heart attack years after retirement from a five-year period of service, the claimant should be required to show that the heart condition developed "during a period of employment" from factors encountered on the job. Otherwise, applying the language of the five-year presumption literally, a fireman, having retired from the force at a young age in perfect health, will be entitled to the presumption for benefits many years later without any proof linking his heart attack to his five years of service as a fireman. A statutory construction allowing such an "absurd consequence" belies legislative intent. La. C.C. art. 9. Yet that was the construction of this statute which the WCJ felt compelled to follow.
Attaway, Vallelungo and Rothell all had evidence proving some development had to have occurred during employment as a fireman before retirement. That element of proof was expressly found by the WCJ as not present here. I think the ruling must be reversed.

APPLICATION FOR REHEARING
Before HIGHTOWER, BROWN, STEWART, CARAWAY, and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] Plaintiff did not seek benefits from his last employer, Isle of Capri Casino.