KENNETH PREVOST

VERSUS

CITY OF NEW ORLEANS
FIRE DEPARTMENT

\* NO. 2024-CA-0114

\*

\* COURT OF APPEAL

\* FOURTH CIRCUIT

\* STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 20-01068, DISTRICT "08"
Honorable Catrice Johnson-Reid, The Office of Workers' Compensation
\* \* \* \* \* \*
**Judge Karen K. Herman**
\* \* \* \* \* \*

(Court composed of Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge Karen K. Herman)

William Roy Mustian, III
STANGA & MUSTIAN, APLC
3117 22nd Street, Suite 6
Metairie, LA 70002

            COUNSEL FOR PLAINTIFF/APPELLEE


Stephen G. Collura
Wayne J. Fontana
ROEDEL PARSONS BLACHE FONTANA PIONTEK & PISANO, ALC
1555 Poydras Street, Suite 1700
New Orleans, LA 70112

            COUNSEL FOR DEFENDANT/APPELLANT

                                        AFFIRMED
                                        OCTOBER 1, 2024

This is a workers' compensation case. Defendant-Appellant, the New Orleans Fire Department ("NOFD") appeals the May 20, 2022 judgment rendered by the workers' compensation judge ("WCJ"), which found the claim filed by Plaintiff-Appellee, Kenneth Prevost ("Prevost"), under the Fireman's Heart and Lung Act was compensable and awarded Prevost $2,000.00 in penalties and $3,500.00 in attorney's fees.

For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

The record provides that Prevost was a firefighter for NOFD from approximately 1985-2014.[1] In February 2020, Prevost filed a 1008 disputed claim for workers' compensation benefits related to a heart condition under the Fireman's Heart and Lung Act with the Office of Workers' Compensation. NOFD filed a notice of controversion, disputing that the workers' compensation claim was compensable.

The disputed claim for compensation came for trial on March 8, 2022.

---

[1] Prevost stopped working for the NOFD after he was injured on or about February 18, 2014. The appeal related to workers' compensation benefits for the accident is addressed in a separate appeal before this Court. *See* 2024-CA-115.

1

Only Prevost testified at trial. Prevost stated he became a firefighter in the 1980s. Before his employment as a fireman, he testified he did not have any heart problems. However, Prevost stated that he was told that his heart "jumps an extra beat." Prevost testified in January 2020, he was diagnosed with aortic stenosis. He stated that he had to have open heart surgery June 2020 and got a pig valve to replace a defective heart valve.

Prevost testified regarding the physical exertion involved with his work as a firefighter and the atmosphere to which he was exposed. The transcript provides:

> Q. Right. Let's talk a little bit about what was involved with your work as a fire fighter. What kind of exertion was involved in your work as a fire — physical exertion?
>
> A. Well, when we made a fire we went from zero to 1000 miles an hour within minutes, you know. When you get on the truck, it takes you, if you're putting your clothes on, by the time you got everything on, tank and mask and everything, in a house fire when you go in you're working, I mean, like I say you go from zero to 100 miles an hour in 10 minutes.
>
> . . .
>
> And after 10 to 15 minutes with the amount of heat and exertion, you're almost done and that's when they start rotating everybody. So, you know, you go, you do that periodically.
>
> Q. So you go back in rounds, is that how it works?
>
> A. Yeah, you would go outside and —A I'm trying to think of the word, but you go outside and breathe air. Sit down, take your mask off cool off for a while and then mask back up and rotate again. That's why on Lifetime TV, you see all these firemen laying on the sidewalk and wondering, "What's these lazy guys doing laying there?" Well, they had been in and got beat up. They're outside trying to resuscitate to get back up and go back in again.
>
> Q. What's your adrenaline level like when you go to a fire?
>
> A. Like I say, zero to 100 miles an hour. Your adrenaline is pumping like unbelievable.

Q. Yeah. What about things that you're exposed to fighting fires, like fumes, smoke. Tell us about that.

A. Well, that's the thing, even though you have an air mask, it's not completely, you're not completely sealed. It's furnishing you with oxygen, but you're still getting smoke and stuff past it. We've gone down in engine rooms in tugboats, you know, you've got asbestos coating the exhaust pipe and dealing with that sometimes. Sometimes, you go in and there's chemicals and stuff laying around, so you really don't know what you're exposed to.

On cross-examination, Prevost testified that Dr. Frederick Kushner ("Dr. Kushner"), his treating cardiologist, never advised him that he had a congenital heart condition. He stated he was never informed that he was born with two valves instead of three. When asked about whether Dr. Kushner discussed the cause of his valve defect, Prevost responded: "Not really. What he said was is that it was just because of age and what I did for a living put stress on it."

In addition to his own testimony to support his claim, Prevost offered NOFD's 1002 Controversion Form; the Notice of Disagreement/Amicable Demand; as well as selected medical records of West Jefferson Heart Clinic and West Jefferson Medical Center.

NOFD submitted the Second Medical Opinion ("SMO") Report of Dr. Carl Lavie ("Dr. Lavie"); Form 1007 First Injury Report; and an executed 1121 Choice of Physician Form as exhibits.

The medical records submitted by Prevost show that he started receiving treatment for his heart in 2017. Dr. Kushner noted that Prevost had hypertension and a systolic murmur. An echocardiogram conducted in November 2017 stated: "[u]nable to determine number of aortic cusps;" "Doppler interrogation of the aortic value is abnormal;" "moderate to severe stenosis of aortic valve;" and "mild

3

mistral valve insufficiency." Prevost also saw Dr. Edmund Kerut in July 2019, who noted Prevost "might have a bicuspid valve."

An echocardiogram conducted in September 2019 shows: "[b]orderline left ventricular hypertrophy;" "hyperdynamic left ventricular systolic function;" "[p]ossible bicuspid aortic valve;" "[s]evere aortic valve stenosis;" and "[b]orderline dilated descending aorta." In a follow-up visit, Dr. Kushner stated Prevost had a: "1) [m]urmur; 2) aortic stenosis; 3) hypertension; 4) abnormal coronary calcium score; and 5) history of nontypical chest pain." In December 2019, Dr. Kuschner noted that Prevost had "calcific aortic stenosis severe aortic valve calcification" and that there was "possibly [a] bicuspid valve."

The medical records further show that in March 2020, Prevost underwent cardiac catheterization. Eventually, Prevost had aortic valve replacement (sometimes referred to in the record as "AVR") surgery in June 2020.

The SMO report of Dr. Lavie, offered by the NOFD, noted the following diagnoses regarding Prevost's heart: bicuspid aortic valve; chronic combined systolic and diastolic heart failure; coronary artery disease "involving native coronary artery of native heart without angina pectoris;" and bilateral carotid artery disease. The report of Dr. Lavie also provided that Prevost's aortic valve replacement was "caused by a congenital bicuspid aortic valve[,] not firefighting."

After trial, both parties submitted post-trial memoranda.

On May 20, 2022, the trial court issued a judgment and reasons for judgment finding: that NOFD failed to rebut the presumption under La. R.S. 33:2581; that Prevost's Heart and Lung Act claim was compensable; and that NOFD acted

4

arbitrarily and capriciously regarding its controversion of Prevost's benefits and awarded Prevost $2,000.00 in penalties and $3,500.00 in attorney's fees.[2]

NOFD filed the instant appeal. Prevost filed an answer to the appeal, seeking a modification of the attorney's fee award for an additional $2,500.00 covering work on appeal.

## DISCUSSION

The standard of review in workers' compensation cases was summarized in *Lentz v. City of New Orleans, Police Dep't*, 2022-0500, p. 4 (La. App. 4 Cir. 12/15/22), 353 So.3d 1060, 1064, *writ denied*, 2023-00045 (La. 3/14/23), 357 So.3d 831, as follows:

> In workers' compensation cases, appellate courts apply the manifest error, or clearly wrong, standard of review to factual findings by the Office of Workers' Compensation. *Dean v. Southmark Construction*, [20]03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117. To reverse a trial court's factual findings under the manifest error standard, an appellate court must find that "a reasonable factual basis does not exist for the finding of the trial court" and that the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993) (citing *Mart v. Hill*, 505 So.2d 1120, 1127 (La. 1987)). An appellate court must evaluate "whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So.2d at 882 (internal citations omitted). "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Id.* (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989); *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La. 1978)). This standard of review acknowledges that the trial courts are more appropriately equipped to weigh the credibility of live witnesses and upholds the unique functions of the trial and appellate courts. *Stobart*, 617 So.2d at 883 (citing *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La. 1973)).

---

[2] "It is a 'well-settled rule that the [trial] court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *TKTMJ, Inc. v. Sewerage & Water Bd. of New Orleans*, 2020-0154, p. 3, n. 4 (La. App. 4 Cir. 12/16/20), 366 So.3d 276, 282, (quoting *Wooley v. Lucksinger*, 2009-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572).

> Legal errors in a workers' compensation proceeding are reviewed *de novo*. *MacFarlane v. Schneider Nat'l Bulk Carriers, Inc.*, 07-1386, p. 3 (La. App. 4 Cir. 4/30/08), 984 So.2d 185, 188 (citing *Brantley v. Delta Ridge Implement, Inc.*, 41,190, p. 8 (La. App. 2 Cir. 6/28/06), 935 So.2d 308, 314). Questions of statutory interpretation are also subject to *de novo* review by appellate courts. *Id.* (internal citations omitted).

*Id.* (quoting *Matthews v. Big Easy Janitorial, L.L.C.*, 2022-0164, pp. 5-6 (La. App. 4 Cir. 8/10/22), 346 So.3d 325, 330-31, *writ denied*, 2022-01347 (La. 11/16/22), 349 So.3d 1001).

On appeal, NOFD argues that the WCJ erred in: 1) finding that it failed to rebut the presumption found in the Firefighter's Heart and Lung Act; 2) finding Prevost's claim for workers' compensation was compensable under the Act; and 3) finding that Prevost was entitled to $2,000 in penalties and $3,500 in attorney's fees because it acted arbitrarily and capriciously in the denial of the workers' compensation claim.

The Firefighter's Heart and Lung Act

The Firefighter's Heart and Lung Act (the "Act") is "special legislation created to protect firefighters who develop cardiac and pulmonary issues resulting from their service." *Safford v. Hammerman & Gainer Int'l, Inc.,* 2016-0209, p. 2, n.1 (La. App. 4 Cir. 7/20/16), 198 So.3d 227, 229 (citing *Richards v. St. Bernard Par. Gov't,* 2011-1724 (La. App. 4 Cir. 5/2/12), 91 So.3d 524, 526).

The Act is set forth in La. R.S. 33:2581, and provides:

> Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. **Such disease or infirmity shall be presumed, prima facie,**

**to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.**[3]

(emphasis added).

In interpreting the Act, this Court explained that "a five-year veteran employee in the classified fire service is not only entitled to workers' compensation benefits by the Act's treatment of his [or her] heart-related disease as an occupational disease, but is also entitled to a presumption that such heart-related disease developed during his [or her] employment and was caused by or resulted from the nature of the work performed." *Safford v. New Orleans Fire Dep't,* 2023-0495, pp. 30-31 (La. App. 4 Cir. 2/1/24), 384 So.3d 909, 931 (alterations in original) (quoting *Richards,* 2011-1724, p. 5, 91 So.3d at 528).

"The presumption created by La. R.S. 33:2581 applies, even though the condition may not manifest itself until after retirement." *Coats v. City of Bossier City*, 31,164, p. 4 (La. App. 2 Cir. 10/30/98), 720 So.2d 1283, 1287 (citing *Rothell v. City of Shreveport,* 626 So.2d 763, 765 (La. App. 2d Cir. 1993); *Vallelungo v. City of New Orleans,* 95–0264, p. 4 (La. App. 4 Cir. 5/01/96), 673 So.2d 1292, 1295). However, the "length of time between the manifestation of the infirmity and

---

[3] While not specifically part of the Louisiana Workers' compensation Act, La. R.S. 23:1021, *et seq.,* this Act has consistently been applied to workers' compensation cases involving firefighters. *See Vallelungo v. City of New Orleans*, 95-0264 (La. App. 4 Cir. 5/1/96), 673 So.2d 1292, 1295 (citing *Saling v. City of New Orleans*, 398 So.2d 1205 (La. App. 4th Cir. 1975); *McKenzie v. City of Bossier City,* 585 So.2d 1229 (La. App. 2d Cir. 1991)); *see also Safford*, 2023-0495, p. 22-23, 384 So.3d at 927. "Once a disease or condition covered by [the Firefighter's Heart and Lung Act] is found to exist, the applicability of the workers' compensation provisions is resolved and questions attendant to compensation are then decided pursuant to La. R.S. 23:1021 *et seq.*" *Safford*, 2023-0495, p. 23, 384 So.3d at 927 (quoting *Amos v. Ouachita Par. Police Jury*, 43,289, p. 16 (La. App. 2 Cir. 6/18/08), 991 So.2d 102, 111).

retirement may be a factor in rebutting the presumption of development and causation during employment."[4] *Coats*, 31,164, pp. 4-5, 720 So.2d at 1287.

To rebut the presumption of the Act, the employer "must prove that the fire service 'did not precipitate, accelerate, aggravate, or otherwise cause or contribute to' the heart condition." *Arsenaux v. City of New Orleans*, 98–1405, p. 5 (La. App. 4 Cir. 12/23/98), 729 So.2d 1056, 1059 (quoting *Pfister v. City of New Orleans,* 95–1750 (La. App. 4 Cir. 9/18/96); 681 So.2d 426, 430). "The presumption is almost impossible to rebut." *Id.*; *see also Richards v. St. Bernard Par. Gov't*, 2011-1724, p. 6 (La. App. 4 Cir. 5/2/12), 91 So.3d 524, 529.

This Court in *Richards*, 2011-1724, pp. 5-6, 91 So.3d at 528, further explained the burden to rebut the Act's presumption as follows:

> [T]he Legislature's provision of the presumption [in the Act] "effectively shift[ed] the burden of proof to the employer who became obliged to prove the lack of causation between the disease and the employment." *Vincent v. City of New Orleans*, 326 So.2d 401, 403 (La. App. 4th Cir.1975). We went on to state that "[t]his shifting of the burden of proof obviously imposes an onerous task upon the employer, but this was, we believe, intended by the legislature." *Id.* The burden of affirmatively proving that the heart-related disease is *not* causally related is "admittedly, very difficult." *Id.* We even noted that the employer had failed to call a physician, which we described as "understandable since the statutory burden on the City in this instance essentially required it to prove a negative—an almost impossible evidentiary task." *Id.,* n. 2.
>
> We recognized, and essentially reiterated, on rehearing that "the force of the presumption" in favor of the employee is such that although "it is termed rebuttable it is, in fact, almost impossible to rebut." *Vincent v. City of New Orleans,* 326 So.2d at 405 (on rehearing). **The employer "is placed in the difficult position of being obliged to prove a negative," which is that the heart-related disease "could not have resulted from his service as a firefighter**." *Id.* But we concluded "that the statute cannot fairly be construed in any other way." *Id.*

---

[4] The parties do not raise an issue regarding the length of time the heart condition manifested.

(emphasis added).

NOFD first argues it should not have to bear the aforementioned "difficult" and "almost impossible" burden to overcome the Act and relies on *Gilliland v. City of Monroe*, 42,458 (La. App. 2 Cir. 10/10/07), 968 So.2d 270, to support its contention.

In *Gilliland*, the WCJ and the Second Circuit applied the evidentiary presumptions found in the Louisiana Code of Evidence to the Act and effectively made the presumption at issue easier to overcome. *Id*. at p. 6, 968 So.2d at 273 ("[t]he legal presumption contained in the Act is an evidentiary presumption, bringing into play Code of Evidence Articles 301, *et seq*., which define the foundation, weight and other effects of such presumption").[5] However, this Court

---

[5] The Second Circuit stated, in relevant part:;

> The "presumptions" the Act creates are two "inferences" which are the evidentiary facts supporting Gilliland's claim. It may be inferred (i) that Gilliland's lung disease developed during his employment, and (ii) that the disease was caused by his work as a fireman.

> Significantly, these two inferred facts giving the plaintiff an evidentiary benefit are nonetheless *circumstantially* produced "inferences." They are not products of direct evidence pinpointing the exact timing of development of the disease or its etiology in relation to an identified risk encountered on the job. Moreover, since the statute provides no conclusive presumption but only an evidentiary benefit, Article 306 provides that the trier of fact need not credit the inference gained from the Act if "it is persuaded by the controverting evidence of the nonexistence of the inferred fact." That controverting evidence, likewise, may be circumstantial evidence, as would be expected for the frequently difficult task of identifying the development and cause of heart or lung disease. Thus, in a given case the trier of fact may choose circumstantial evidence that tends to disprove the statutory inferences gained under the Act. For example, a fireman who worked for five years and leaves employment with the department at age 30, would find the statutory inferences of the Act for an occupational disease claim greatly overshadowed by other inferences concerning his heart disease first experienced at age 75.

> There being no conclusive presumption given by the Act, dictum in the jurisprudence of the "almost impossible burden of proving a negative" does not accurately comport with the evidentiary considerations that were before the WCJ after the clarifying 1997 legislation in Articles 304 and 306 providing for the evidentiary treatment of rebuttable presumptions. That dictum in many of the cases was expressed in a context where the fireman was disabled by the

9

in *Richards* analyzed the two competing views of evidence to rebut a presumption

and specifically rejected the Second Circuit's view in *Gilliland* with respect to the

Act at issue in the present case. This Court stated:

> [W]hile it is true that the *Gilliland* decision seemed to be applying the Code of Evidence to the Act's presumptions, **we do not share the view that the Code of Evidence effected a substantive change in our treatment of the Act's presumption**. Commentators, in addressing the treatment of rebuttable presumptions in the civil law, distinguish between the "bursting bubble" or Thayer approach, and the Morgan view. Pugh, Force, Rault & Triche, *Handbook on Louisiana Evidence Law 2009* (West, 2009), p. 358. The former approach "ascribes a lighter weight to the presumption, and holds that upon proof of the predicate fact the opponent faces only the burden of coming forward with some credible evidence against the existence of the fact to be inferred." *Id.,* pp. 358–359. "If the opponent produces such evidence the presumption disappears ("bursts") and the trier-of-fact is not instructed as to the existence of a presumption; it simply decides the issue on the basis of all evidence heard, as with any other fact." *Id.,* p. 359.

> The so-called "Morgan view," or latter approach, however, "affords greater weight to the presumption." *Id.* "Proof of the predicate fact fixes on the opponent the full burden of persuasion, *or the duty of disproving the fact to be inferred.*" *Id.* (emphasis added). The Commentators conclude that Chapter 3 of the Evidence Code (La. C.E. arts. 301–308) "in keeping with prior Louisiana caselaw, adopts the Morgan approach affording a somewhat stronger weight to presumptions." *Id.*

*Richards*, 2011-1724, pp. 13-14, 91 So.3d at 531-32 (emphasis added).

Because this Court specifically rejected the evidentiary burden outlined by

*Gilliland*, NOFD's argument in this regard lacks merit.

NOFD also argues it rebutted the presumption provided for in the Act

because Dr. Lavie opined that Prevost's bicuspid valve was related to a congenital

---

manifestation of the heart or lung disease during employment or immediately after retirement. Yet, with the passage of time after termination of work as a fireman, controverting evidence, circumstantial or otherwise, can arise that may alter the evidentiary equation allowing the statutory classification of the diseases as inferentially occupational to be overcome.

*Gilliland*, 42,458, pp. 7-8, 968 So.2d at 274.

birth defect and not the result of Prevost's employment at the NOFD.[6] Similarly,

NOFD claims the WCJ was manifestly erroneous in finding Prevost's claim

compensable because his congenital heart condition could not have been caused by

his employment.

However, this Court in *Richards* as well as other circuits have found that

medical evidence that "does not rule out the work as a firefighter could not have

contributed or aggravated the heart-disease … is not affirmative evidence

sufficient to overcome the Act's presumption." *Richards,* 2011-1724, pp. 9-10 (La.

App. 4 Cir. 5/2/12), 91 So.3d at 530: The Court stated:

> [T]he Act's presumption shall be applied unless the employer
> with affirmative evidence establishes that the heart-related disease is
> neither caused by, nor results from, employment as a firefighter.
> Medical evidence, however, which does not rule out that work as a
> firefighter could not have contributed to or aggravated the heart-
> disease, or which is tempered by acknowledgments, agreements, or
> concessions that the work may have been a cause, even though
> remote, or possibly a contributing factor of the heart-disease, or which
> is otherwise equivocal, is not affirmative evidence sufficient to
> overcome the Act's presumption.

*Id.; see also Miley v. Bogalusa Fire Dep't*, 2014-1113, p. 5 (La. App. 1 Cir.

3/6/15), 166 So.3d 319, 323 (finding that employer failed to prove the fireman's

employment "did not in any way precipitate, accelerate, aggravate, or otherwise

cause or contribute to the heart condition" where the medical experts conceded that

the fireman's work could have exacerbated the heart disease); *Olivier v. City of*

---

[6] In its brief, NOFD further notes that Prevost should not be entitled to the presumption because his heart condition is congenital and thus could not be causally related to his employment. However, the Act provides after an employee has been employed five years as a firefighter, any heart condition suffered by the firefighter is presumed to be related to their employment. *See Safford*, 2023-0495, p. 31, 384 So.3d 909, 931; *Richards*, 2011-1724, p. 5, 91 So.3d at 528. It is undisputed that Prevost has worked more than five years as a firefighter. As discussed herein, to rebut the presumption, the employer must then prove with affirmative evidence that the heart issue could not have developed during or resulted from firefighting to relieve itself from the obligation of paying workers 'compensation benefits. *See Richards*, 2011-1724, p. 5, 91 So.3d at 528; *McClure v. City of Pineville*, 2006–279, p. 9 (La. App. 3 Cir. 12/6/06), 944 So.2d 795, 802

*Eunice*, 2011-1054, p. 7 (La. App. 3 Cir. 6/6/12), 92 So.3d 630, 635 (finding that the employer's medical expert "could not rule out that firefighting contributed to, accelerated, or aggravated [the heart condition]"); *McCoy v. City of Shreveport Fire Dep't,* 26,181, p. 11 (La. App. 2 Cir. 1/25/95), 649 So.2d 103, 108 (reversing WCJ's denial of benefits where "the medical opinion (more probably than not), that generally negates that the fireman's work was the cause of the heart disability, is tempered by acknowledgements, agreements, or concessions that the work may have been a cause, even though remote, or possibly a contributing factor"); *accord Middlebrooks v. City of Bastrop*, 51,073, p. 5 (La. App. 2 Cir. 1/11/17), 211 So.3d 1231, 1235, (addressing compensation benefits under La. R.S. 33:2011, which affords a firemen diagnosed with certain types of cancer a presumption of causation, and finding that the where the "medical opinion did not rule out 'that a job or lifestyle could be an aggravating factor in an existing disease'" the evidence was "insufficient to overcome the presumption").

In *Richards*, a retired firefighter died of coronary artery disease. The widow sought death benefits, funeral expenses, and indemnity payments from St. Bernard Parish Fire Department. The WCJ found that the widow was not entitled to death benefits because he found that the firefighter's disease was not caused by his work. This Court reversed and awarded the widow benefits. Prior to doing so, the *Richards* Court summarized this Circuit's application of the Act's presumption:

> We found that the employer was unable to overcome the Act's presumption despite eminent medical opinions that arteriosclerosis develops at any early age, is not unusual in someone with a history of hypertension, cigarette smoking and obesity, and that it is not related to any occupation. *See Saling v. City of New Orleans,* 398 So.2d 1205, 1207-1208 (La. App. 4th Cir. 1981). But the medical opinions did not rule out "that a job or life style could be an aggravating factor in an existing disease." *Id.* at

12

1208. Thus, we found the physicians' opinions "insufficient to overcome the presumption." *Id.*

Again, we found that medical testimony which points to causes of heart-related disease other than firefighting but cannot "rule out his occupation as having aggravated or contributed to that condition" is insufficient to overcome the presumption. *See Vallelungo v. City of New Orleans,* 95-0264 (La. App. 4 Cir. 5/1/96), 673 So.2d 1292, 1296. We stated that the Heart and Lung Act does not require that the firefighting employment be "the only cause" of the heart-related disease; it is sufficient that the employment "contributed, accelerated, or aggravated the condition." *Id.* Thus, unless the evidence rules out the proposition that work as a firefighter could not have contributed to or aggravated the disease, the presumption has not been rebutted**.** *Id.*

*Richards,* 2011-1724, pp. 6-7, 91 So.3d at 528–29.

The Court noted that while the cardiologist testified that "in his opinion Mr. Richards' coronary artery disease was not caused by his employment" he also acknowledged that hypertension developed during the fireman's active employment and was risk factor to the disease, and "could not rule out" that the fireman's employment "played no role in the development of his coronary artery disease." *Richards*, 2011-1724, p. 11, 91 So.3d at 530–31.[7] The Court thus found

---

[7] The Court stated:

> The sole medical witness in this case testified that in his opinion Mr. Richards' coronary artery disease was not caused by his employment. But, tellingly, the cardiologist testified that Mr. Richards' well-documented hypertension developed during the time of his active employment, that the hypertension caused damage to Mr. Richards' heart, and that hypertension is one of the main risk factors for the development of coronary artery disease. The cardiologist's testimony was tempered by his statement that it was possible that Mr. Richards developed the coronary artery disease as a result of the hypertension and, most importantly, could not rule out that Mr. Richards' employment played no role in the development of his coronary artery disease.
>
> When we correctly apply the Act's presumption to what the WCJ characterized as a dearth of medical evidence, we must conclude that the WCJ was clearly wrong in finding that Mr. Richards' employment did not precipitate, accelerate, aggravate, or otherwise cause or contribute to the heart disease from which he died. The relationship between hypertension and coronary artery disease is not after all unrecognized. *See Coats v. City of Bossier City*, 31,164 (La.App. 2 Cir. 10/30/98), 720 So.2d 1283.

that "[t]he medical evidence in this case is insufficient for the parish government to overcome the Act's presumption" and that the WCJ "erred in finding that the fireman's employment did not precipitate, aggravate or other contribute to his heart condition." *Id*. at p. 12, 91 So3d at 531.

In *Olivier*, 2011-1054, p. 1, 92 So.3d at 632, similar to this case, the fireman was diagnosed as having aortic valve bicuspid stenosis and underwent surgery to replace his bicuspid aortic valve to relieve the symptoms of the stenosis. The fireman made written request for reimbursement for his medical expenses and authorization for medical treatment. His employer, the City of Eunice, declined, claiming that his heart condition was not related to his employment as a fireman. The fireman filed for workers' compensation under the Act. The WCJ found that the Act's presumption was not rebutted and that the employer must pay for the fireman's treatment and expenses related to the aortic stenosis. The employer appealed. The Court noted that "to overcome the Heart and Lung Act presumption, the City had to prove that the employee's 'heart disability could *not* have resulted from his service as a firefighter'" and that "the probability that a firefighter's employment did not contribute to his lung disease is insufficient to rebut the presumption if his employment cannot be ruled out as a contributing factor." *Olivier,* 2011-1054, p. 5, 92 So.3d at 634 (quoting *McClure,* 2006–279, p. 9, 944 So.2d at 802) (emphasis in original). The Third Circuit then affirmed the WCJ,

---

The cardiologist's testimony is at best equivocal. The medical evidence in this case is insufficient for the parish government to overcome the Act's presumption. Thus, we must apply the presumption and find that Mr. Richards' employment was a contributing factor, if not the sole cause, in Mr. Richards' heart-related disease and death, which entitles his widow to workers' compensation's benefits.

*Richards*, 2011-1724, pp. 11-12, 91 So.3d at 531.

14

finding that the medical expert's statement that the aortic stenosis was not caused by the fireman's work did not rebut the Act's presumption because it could not exclude that the fireman's occupation could have accelerated or contributed to the fireman's heart condition. The *Olivier* Court stated:

> Mr. Olivier's surgeon, Dr. Basel Ramlawi, testified that Mr. Olivier was born with a bicuspid aortic valve and that the normal aortic valve is tricuspid. He explained that bicuspid valves "are predisposed to become calcified" and "to develop premature aortic stenosis." While Dr. Ramlawi believed this is what happened to Mr. Olivier, he further explained, "There's no way to prove that but ... [Mr. Olivier] fits into the typical form of patients with bicuspid aortic valves with premature calcification."

> Dr. Ramlawi testified there is no evidence that firefighting contributes to or leads to aortic stenosis, but he also testified that there is no evidence firefighting does not aggravate, contribute to, accelerate, or cause aortic stenosis. Despite not being aware of any study which shows "there is no possible way that employment as a firefighter can aggravate, contribute to, accelerate or cause aortic stenosis," Dr. Ramlawi opined, "I don't think anybody can rule it out." Dr. Ramlawi, however, also testified that because he was not aware of any evidence that employment as a firefighter can aggravate, contribute to, accelerate or cause aortic stenosis, he does not think that it does. He further explained that there is some thought that stress or increased vigorous activity could potentially increase the likelihood that a person would have premature degeneration of a particular valve, but there is no proof that it does.

> *Meche v. City of Crowley Fire Department,* 96–577 (La. App. 3 Cir. 2/12/97), 688 So.2d 697, *writ denied,* 97–632 (La. 4/25/97), 692 So.2d 1088, presented a claim similar to Mr. Olivier's. There, the firefighter was diagnosed with "sick sinus syndrome," a condition which required that a pacemaker be implanted. Several doctors testified that the firefighter's employment did not contribute to his condition but also testified that his condition resulted from an unknown cause. This court concluded that the expert testimony regarding causation of the firefighter's condition was "equivocal"; therefore, "the employer [had] not sustained its burden of proving by affirmative evidence that Meche's employment as a fireman could not have contributed to his condition." *Id.* at 702.

> As explained in *McClure* and *Meche,* Dr. Ramlawi's testimony that he did not think Mr. Olivier's aortic stenosis was caused by his employment as a firefighter was insufficient to rebut the Heart and Lung Act's presumption because he could not rule out that firefighting

15

contributed to, accelerated, or aggravated the aortic stenosis. Accordingly, we find no error with the WCJ's determination to this effect.

*Id.* at pp. 5-7, 92 So.3d at 634-35.

In *Miley*, 2014-1113, p. 2, 166 So.3d at 321, a fireman filed for workers' compensation benefits under the Act based on his paroxysmal supraventricular tachycardia ("PSVT"). The WCJ found he was entitled to benefits. The Bogalusa Fire Department appealed, arguing among other things that the fireman's condition was a congenital condition and not one related to his employment as a firefighter. Two medical experts opined that the fireman's heart condition was congenital but recognized that the condition could have been exacerbated by his occupation. *Id.* at p. 6, 166 So.3d at 324. The First Circuit noted the "almost impossible" and "onerous" burden of proving that "the employment did not in any way precipitate, accelerate, aggravate, or otherwise cause or contribute to the heart condition." *Id.* at p. 5, 166 So.3d at 323. The *Miley* Court held that the WCJ was not manifestly erroneous in finding that the PSVT was subject to the Act's presumption and that the medical evidence failed to rebut the presumption.[8] *Id.* at p, 7, 166 So.3d at 324.

Here, as noted above, Prevost was employed by the NOFD several decades and thus well within the five year period set forth in the Act. The record also shows

_____

[8] The *Miley* Court stated:

> As noted by the Second Circuit Court of Appeal in *McCoy*, a medical opinion that generally negates that the firefighter's work was the cause of his heart disability, but which is tempered by acknowledgements, agreements, or concessions that the work may have been a cause or contributing factor, even though remote, is simply insufficient to rebut the statutory presumption that the heart infirmity resulted from the firefighter's work. *McCoy v. City of Shreveport Fire Department,* 26,181 (La. App. 2 Cir. 1/25/95), 649 So.2d 103, 108. The testimony of the experts clearly acknowledged that Mr. Miley's PSVT condition could have been exacerbated by his occupation. Therefore, based upon the entirety of the record, we cannot conclude that the workers' compensation judge committed manifest error in finding that Mr. Miley was entitled to benefits.

that Prevost had begun receiving treatment for heart related problems in 2017. In 2019, he was diagnosed with, among other issues, severe aortic stenosis, aortic calcification, and "possibly" a bicuspid valve. Prevost had AVR surgery to replace to the calcified valve in 2020. The medical records do not state that Prevost's bicuspid aortic valve was congenital nor that the cause of the surgery was due to a birth defect. Moreover, Prevost testified that Dr. Kushner indicated his occupation as a fireman and his age had put stress on his heart condition.[9] Dr. Lavie, on the other hand, stated that Prevost's AVR surgery was due to "a congenital bicuspid aortic valve[,] not firefighting." While Dr. Lavie did not concede Prevost's work as a firefighter could have aggravated his heart condition, jurisprudence is clear that medical evidence which does not exclude that a claimant's work as a firefighter could not have contributed or aggravated his heart condition is inadequate to rebut the presumption set forth in the Act. *Richards*, 2011-1724, p. 11, 91 So.3d at 530–31. Dr. Lavie simply stated that Prevost's surgery was caused by a congenital issue and not by his employment; Dr. Lavie did not explicitly "rule out" that Prevost's work as a firefighter was not an aggravating factor in the development of his heart disease and subsequent surgery. *See Richards*, 2011-1724, pp. 6-7, 10, 91 So.3d at 528, 530. As such, NOFD failed to affirmatively show that Prevost's employment as a firefighter did not contribute to or accelerate Prevost's heart problem.

---

[9] Although this testimony would constitute hearsay, workers' compensation judges are not bound by the technical rules of evidence. La. R.S. 23:1317(A) states, in part, that "[t]he workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence." "In other words, the hearing officer has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence. This more relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies." *Chaisson v. Cajun Bag & Supply Co.*, 97-1225, p. 10-11 (La. 3/4/98), 708 So.2d 375, 381. This Court has further stated that "hearsay evidence must be 'competent evidence' that has some degree of reliability and trustworthiness and of the type that reasonable persons would rely upon." *Hebert v. Fresh Mkt., Inc.*, 2019-0412 (La. App. 4 Cir. 9/18/19), 280 So.3d 756, 764 (citing *Chaisson*, 1997-1225, pp. 12-13, 708 So.2d at 382).

Accordingly, we do not find that the WCJ was manifestly erroneous in concluding NOFD failed to rebut the presumption and in finding that Prevost's heart condition was compensable.

Penalties and Attorney's Fees

La. R.S. 23:1201(F) "authorizes the imposition of penalties and attorney's fees against an employer or insurer who fails to pay workers' compensation benefits." *Matthews,* 2022-0164, p. 18, 346 So.3d at 336. "However, if employers and insurers have reasonably controverted the claim or if such nonpayment results from conditions over which the employer or insurer had no control, penalties and attorney fees will not be assessed against the employer or insurer." *Matthews*, 2022-0164, p. 18, 346 So.3d at 336-37 (citing La. R.S. 23:1201(F)(2)).

NOFD argues that it had evidence to reasonably controvert Prevost's claim as to his cardiac condition and did not act arbitrarily or capriciously regarding its denial of Prevost's claim.

This Court in *Jackson v. Fam. Dollar Stores of Louisiana Inc.*, 2017-0712, pp. 16-17 (La. App. 4 Cir. 10/24/18), 258 So.3d 165, 177–78, summarized the law with respect to whether a claim is reasonably controverted, stating:

> "A claim is reasonably controverted when the employer has sufficient factual and/or medical information to reasonably counter evidence presented by the claimant." *Thibodaux v. Grand Isle Shipyard, Inc.*, [20]16-0583, p. 18 (La. App. 4 Cir. 12/21/16), 207 So.3d 459, 471. As this Court has found:
>
> "To determine whether a claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether an employer or its insurer engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time it refused to pay all or part of the benefits owed."

18

> *Id.*, [20]16-0583,p. 19, 207 So.3d at 471-72 (quoting *Verges v. AmTrust N. Am. Community Leaders Advocacy for Success*, [20]16-0203, p. 5 (La. App. 4 Cir. 8/31/16), 198 So.3d 1267, 1271).

> To reasonably controvert a claim, employers must demonstrate that they made reasonable efforts to ascertain the worker's exact condition before denying benefits. *Seal v. Sewerage & Water Bd. of New Orleans*, [20]03-0880, p. 8 (La. App. 4 Cir. 9/17/03), 857 So.2d 1065, 1070. "An employer also has a duty to investigate and make every reasonable effort to assemble and ascertain whether a claim is compensable before denying benefits." *Janneck,* [20]12-0316, p. 3, 102 So.3d at 241.

> "Whether an employer has failed to reasonably controvert a claim is a question of fact and is subject to the manifest error standard of review." *Thibodaux*, [20]16-0583, p. 19, 207 So.3d at 471.

NOFD claims it dutifully conducted discovery to support its position and that the initial medical records contained no mention of his employment or its connection to heart disease. NOFD contends the evidence at trial supports the contention that Prevost's heart condition was congenital and not related to his employment and thus had reason to controvert Prevost's benefits.

Prevost, however, contends NOFD did not reasonably controvert his claim because it did not develop any contradictory evidence until it sent him to be evaluated by Dr. Lavie for a second medical opinion in January 2022. Prevost also notes that there is no evidence that NOFD sought any information from Prevost's treating cardiologist. As such, Prevost claims it is entitled to penalties and fees.

The record shows that Prevost reported his heart disease to NOFD in February 2020 and as noted by Prevost, NOFD did not attempt to develop contradictory evidence until it sought the SMO in 2022. NOFD did not possess medical evidence to counter Prevost's evidence until about two years after Prevost filed its workers' compensation claim. Thus, it does not appear NOFD established that it made reasonable efforts to ascertain Prevost's exact condition prior to

denying benefits. Accordingly, it does not appear that the trial court was manifestly erroneous in awarding penalties and attorneys' fees to Prevost.

Request for Attorney's Fees on Appeal

Prevost filed an answer to the appeal seeking an additional $2,500.00 in attorney's fees incurred by counsel in opposing NOFD's appeal.

"It is well-established that '[a] workers' compensation claimant who timely answers the appeal is entitled to increased attorney fees and penalties to reflect additional time incurred in defending against employer/insurer's unsuccessful appeal, especially where the claimant makes a clear showing of the employer's arbitrary and capricious refusal to pay the claim.'" *Lentz,* 2022-0500, p. 10 (La. App. 4 Cir. 12/15/22), 353 So.3d at 1067 (quoting *Hucke v. New Orleans Glass*, 2003-1709, p. 6-7 (La. App. 4 Cir. 2/11/04), 868 So.2d 166, 170-71).

Because we are denying NOFD's relief sought its appeal we grant Prevost's request and award counsel for Prevost $2,500.00 in attorney's fees for the defense of this appeal.

**CONCLUSION**

For the foregoing reasons, we affirm the March 20, 2022 judgment of the WCJ. Additionally, we award Prevost $2,500.00 in attorney's fees to cover the cost of defending the appeal.

**AFFIRMED**